**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Reginald J. HOLZER,
Defendant–Appellant.**

**No. 86–1879.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1988.

Decided Feb. 19, 1988.*

---

---

* Because our decision creates a conflict with the Sixth Circuit's decision in *United States v. Runnels,* 833 F.2d 1183 (6th Cir.1987), this opinion has been circulated to the full court. See 7th Cir.R. 40(f). None of the judges in regular active service voted to hear the case en banc; Chief Judge Bauer and Judge Flaum did not participate in the consideration or decision of the matter.

Edward L. Foote, Winson & Strawn, Chicago, Ill., for defendant-appellant.

Lawrence E. Rosenthal, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., plaintiff-appellee.

Before CUMMINGS, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

A jury found Reginald Holzer, formerly an Illinois state trial judge, guilty of mail fraud, 18 U.S.C. § 1341, extortion, 18 U.S. C. § 1951 (Hobbs Act), and racketeering, 18 U.S.C. § 1962 (Racketeering Influenced and Corrupt Organizations, or RICO, Act). Judge Marshall imposed concurrent sentences of 18 years on the extortion and racketeering charges and 5 years on the mail fraud charges. We affirmed. 816 F.2d 304 (7th Cir.1987). Holzer petitioned for certiorari, challenging only the mail fraud counts. While his petition was pending, the Supreme Court decided *McNally v. United States,* — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), reversing the conviction of a public official for mail fraud based on the same "intangible rights" doctrine on which Holzer's conviction for mail fraud had been based. At the suggestion of the Solicitor General, the Court remanded our decision in this case for reconsideration in light of *McNally.* — U.S. —, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). We invited briefs and argument. Holzer asks us to direct his acquittal of mail fraud and order a new trial for extortion and racketeering, while the government asks us to stand by our previous decision and affirm the judgment in its entirety.

The facts that led up to Holzer's prosecution and conviction are fully stated in our previous opinion. Over a period of many years Holzer had extracted a long series of bribes, most of them in the form of "loans" that he did not intend to repay, from lawyers with cases before him or from persons who sought appointment as receivers. The government characterized this conduct as a scheme to defraud (among others) the State of Illinois, its citizens, and the parties on the other side of the cases from the lawyers who bribed him, of the right to the administration of justice by an honest judge. The government made no effort to show at trial, however, that Holzer had received any money or property from the victims of the fraud (citizens, litigants, lawyers), as opposed to the lawyers and receivers who were his accomplices. At the time of trial and appeal it was well established in the lower federal courts that no such showing was required to convict a public official of mail fraud; a scheme to deprive persons of their "intangible rights" to honest government was a "scheme or artifice

to defraud" within the meaning of the mail fraud statute.

*McNally* changed this. A Kentucky official named Gray participated in a scheme to funnel commissions on insurance purchased by the state to an insurance agency in which Gray and a private citizen named McNally had a financial stake. The two were indicted and convicted of mail fraud (McNally as Gray's aider and abettor) for having deprived the citizens of Kentucky of their right to honest government. The Supreme Court reversed both men's convictions because the mail fraud statute "does not refer to the intangible right of the citizenry to good government." 107 S.Ct. at 2879. Holzer, similarly, was indicted for defrauding citizens, litigants, lawyers, and court appointees (presumably applicants for receivership passed over in favor of those who bribed Holzer) "of their rights to have the business of the Circuit Court of Cook County [Holzer's court] conducted honestly, fairly and impartially, free from corruption, collusion, bias, partiality, dishonesty, breach of duty, conflict of interest, extortion, bribery and fraud, and in accordance with the laws of the State of Illinois...." And, in defining "scheme ... to defraud," the prosecutor told the jury that such a scheme is "basically a plan to deprive someone of something of value. The thing of value that the Government says was lost here is what the lawyers call intangible rights." The jury instructions stated in like vein that "a scheme means some plan to deceive another and to deprive another of something of value, including intangible rights." It might seem obvious, therefore, that *McNally* governs this case and that Holzer's conviction of mail fraud must be vacated. But the government disputes this, citing several decisions since *McNally* in an effort to show that *McNally* is distinguishable from the present case.

In *United States v. Runnels,* 833 F.2d 1183 (6th Cir.1987), a divided panel of the Sixth Circuit affirmed a mail fraud conviction where the jury had been instructed on an "intangible rights" theory. A lawyer had bribed the defendant, who was the president of a local union, to refer claims by union members for workmen's compensation to the lawyer. The court pointed out that under state law Runnels had a fiduciary duty to the union members that he breached when he took the bribes, and therefore a constructive trust was impressed on the bribes at the moment of receipt. See 5 Scott, The Law of Trusts §§ 462.4, 502, at pp. 3421, 3555 (3d ed. 1967). The court reasoned that Runnels' action in retaining the bribes rather than turning them over to the union members deprived the latter of property belonging to them, so that Runnels had deprived them not only of their "intangible" right to an honest administration of the union but also of their tangible right to a dishonest administrator's ill-gotten gains. Likewise, argues the government in our case, when Holzer took bribes he became by operation of state law the trustee of those moneys, with the result that, by failing to turn them over to the state, he deprived the state of property belonging to it. "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.).

McNally may have fallen athwart the same principle, except that the prosecutor in *McNally* had never argued that the defendants' conduct violated a fiduciary duty imposed by state law and that therefore the insurance premiums they had received and retained were actually the state's property. The absence of any statutory or case authority in Kentucky for imposing a constructive trust on payments improperly received by agents of the state or their accomplices suggests that more than oversight may have been involved; the situation is different in Illinois, as we shall see. A further complication in *McNally* was that the moneys the defendants had received were not bribes pure and simple. The state would have paid the commissions to some insurance agency, perhaps in the same amount—perhaps indeed to the same

agency. The deprivation really was of an intangible right.

In *United States v. Richerson*, 833 F.2d 1145 (5th Cir.1987), the defendant had been convicted of mail fraud for accepting kickbacks from suppliers of his employer. The jury instructions had contained "intangible rights" language. The court held that this was not plain error. (As Richerson had not objected to the instruction on intangible rights, he had to show that the instruction was plain error in order to obtain a reversal.) The employer had been hurt in its pocketbook: to finance the kickbacks, suppliers had, with Richerson's connivance, submitted false invoices to his employer and the invoices had been paid. That feature is missing here except under the constructive-trust theory of *Runnels*.

■ In *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Supreme Court upheld the conviction of a journalist employed by the *Wall Street Journal* who had made unauthorized disclosure of sensitive financial information that he had collected for use in writing the *Journal*'s "Heard on the Street" column. Treating the information as a trade secret of the *Journal*, the Court held that the journalist had defrauded his employer by depriving it of the exclusive use and enjoyment of its trade secret. *Carpenter*, like *Richerson*, is readily distinguishable from *McNally* and the present case. If an employee receives a payment intended for his employer and pockets it rather than hands it over, he has defrauded the employer, and it is only a small step to the conclusion that it is also fraud to deprive the employer of a trade secret that the employee created for the employer. (Of course the *Journal* still had the information, but the secrecy was gone.) It is another thing to say that retaining a bribe deprives one's employer of property; the money was never intended for the employer. The constructive-trust device (a legal fiction if ever there was one) is ordinarily used to require a person who has acquired property by fraud or other misconduct to convey it to the true owner. *American National Bank & Trust Co. v. United*

*States*, 832 F.2d 1032, 1035 (7th Cir.1987). If Holzer had defrauded the Circuit Court of Cook County of money (or other property, but this detail is irrelevant in this case), the employer would have had a constructive trust in the money—though pointing this out would be an unnecessary step in the analysis, since the case would be governed by *Carpenter* in any event. Holzer's employer may, as we shall see, have had (and may still have) a constructive trust in the bribes, too. But taking one's employer's property by fraud (*Carpenter*) and failing to convey the receipts of bribery to one's employer are not the same acts. The bribes become the employer's property through the fiction of a constructive trust not because he bargained for them but to make sure that the dishonest employee does not profit from them. When the fiction is taken literally and the focus of analysis is thus shifted from the taking of bribes to the failure to turn them over to one's employer, the refusal to take a bribe becomes transmogrified into depriving one's employer of a benefit. Needless to say, this was not the light in which the case was presented to the jury.

■ Unlike *Carpenter* and *Richerson*, *Runnels* is not distinguishable from the present case. True, the principal in *Runnels* was a private rather than public entity, as in most cases which hold that the breach of an agent's fiduciary duty entitles the principal to recover the proceeds of the breach. But in Illinois, as in many other jurisdictions, constructive-trust principles apply with equal force to public fiduciaries. See, e.g., *City of Chicago ex rel. Cohen v. Keane*, 64 Ill.2d 559, 2 Ill.Dec. 285, 357 N.E.2d 452 (1976); *County of Cook v. Barrett*, 36 Ill.App.3d 623, 344 N.E.2d 540 (1976); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978) (federal law). However, we find ourselves in respectful disagreement with the Sixth Circuit on the question whether such principles can be used to save cases that had been brought and tried under the now-discredited "intangible rights" theory.

*Runnels* got its approach from a suggestion in a footnote in Justice Stevens' dis-

sent in *McNally*, see 107 S.Ct. at 2890 n. 10; unfortunately the majority opinion in *McNally* did not deign to mention the suggestion. If it is a proper suggestion, it effectively limits *McNally* to such cases (few in number) as *United States v. Margiotta*, 688 F.2d 108 (2d Cir.1982), where a party "boss" who was not even employed by the government was found guilty of mail fraud because he extracted bribes in exchange for recommending the bribers for government jobs to the appointing authorities. In such cases, which represent the worst abuses of the mail fraud statute, a person is convicted for conduct not even wrongful under state law. *McNally*, however, was not such a case, for there seems little doubt that McNally's conduct violated Kentucky law, see Ky.Rev.Stat.Ann. § 304.9–420 (1981), whether or not the state had a constructive trust in his ill-gotten gains. Read as narrowly as the Sixth Circuit read it in *Runnels*, *McNally* changes the result only in those "intangible rights" cases where the prosecutor forgot to mention that taking the bribe violated state law or (as possibly in *McNally* itself) the state did not have a constructive trust in the bribe moneys. We doubt that the Supreme Court intended so inconsequential a gesture as this interpretation makes of *McNally*. Moreover, even if the Court's holding is confined to the simple statement that "the statute must be limited to the Government's interests as property-holder," 107 S.Ct. at 2875 n. 8; cf. *United States v. Gimbel*, 830 F.2d 621, 626 (7th Cir.1987); *United States v. Wellman*, 830 F.2d 1453, 1462 (7th Cir.1987), it would not in our view permit a conviction where the property in question was the government's merely by virtue of a constructive trust. The doctrine often and here is remedial rather than substantive. "It is immaterial that if the fiduciary had not made the profit it would have been made and could have been retained by someone else," rather than going to the principal. 5 Scott, *supra*, at 3555; see also Restatement of Restitution § 160, comment d (1937). It is therefore only in an attenuated and artificial sense that the bribe is the principal's property. Holzer is not accused of having diverted to his own pocket money intended for his employer; the State of Illinois does not sell justice. A constructive trust is imposed on the bribes not because Holzer intercepted money intended for the state or failed to account for money received on the state's account but in order to deter bribery by depriving the bribed official of the benefit of the bribes. Unless we assume unreasonably that the state wants Holzer to take bribes so that it can recoup them under constructive-trust principles, the state's financial situation is the same whether he takes bribes or doesn't take bribes. The only difference between the two situations is that in the first Holzer has deprived the state of its intangible right to honest civil servants. This is an intangible-rights case and only an intangible-rights case.

There is a further point. Merely because the constructive-trust doctrine allows the beneficiary to obtain restitution of the money or property held in trust, it does not follow that if the "trustee" fails to turn over the trust proceeds when the trust arises (perhaps before he knows they are impressed with a constructive trust) he has stolen the proceeds. We know of no criminal prosecutions based on the theory that the constructive trustee is a thief. We can, however, imagine a different and more persuasive theory linking constructive-trust principles to mail fraud than that advanced by the government: the corrupt public official, having received bribes, takes steps to conceal them in order to defeat the public employer's right to obtain them by means of a suit based on constructive-fraud principles. The employer's right to the bribe money is a thing of value, equivalent to money or property—a tangible right, in other words—and the effort at concealment could thus be the scheme to defraud forbidden by the mail fraud statute. There were efforts at concealment here as there are in virtually every bribery case, but no evidence was presented that the efforts were designed to prevent the state from obtaining the bribe money, as distinguished from preventing the state from discovering the bribery and firing or prosecuting Holzer or

turning him over to the federal authorities for prosecution. Indeed, so far as we know, the State of Illinois has made no effort to obtain any of the bribe money from Holzer.

■ It is a nice question whether, if the government wanted to present evidence that Holzer was guilty of mail fraud under the approach just sketched, it could do so without violating the double-jeopardy clause. Ordinarily when a conviction is reversed because of trial error, the defendant can be retried even if the evidence introduced at trial would not have been sufficient to sustain his conviction but for the error—even if, in other words, the government will have to put in new evidence on retrial to convict him. So we held in *United States v. Tranowski*, 702 F.2d 668, 671 (7th Cir.1983), emphasizing that otherwise the government would have an incentive to overtry its cases, which is no favor to either taxpayers or defendants. See also *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 410 (7th Cir. 1985). These are cases where some of the government's evidence had been admitted erroneously and the remaining evidence was insufficient to convict. Here the defendant was prosecuted under what turned out to be a nonexistent theory of criminal liability, and the question is whether the government should be allowed to retry him under a proper theory, one neither charged nor proved the first time around. In other words, are we reversing for insufficiency of the evidence (in which event retrial is barred) or for trial error (in which event it is permitted)? *Montana v. Hall*, — U.S. ——, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (per curiam), held that a defendant who was tried and convicted of incest and whose conviction was vacated because the incest statute was inapplicable to his conduct could be retried, for sexual assault; but the Court noted, "There is no suggestion that the evidence introduced at trial was insufficient to convict" the defendant of that offense. *Id.* 107 S.Ct. at 1826–27. It was not sufficient here. But we need not decide the double-jeopardy issue. The government does not claim to have either the evidence or the desire to prosecute Hol-

zer under a different theory of mail fraud; so a remand for a new trial would be pointless.

■ The next question is whether the fall of the mail-fraud conviction entitles Holzer to a new trial for extortion and racketeering. (His petition for certiorari did not challenge his conviction for these offenses, but as the government does not argue waiver, any argument of waiver is itself waived.) When, as is often the case (it was here), the jury acquits a defendant of some counts of a multi-count indictment, the defendant is not entitled to a new trial on the counts of which he was convicted, on the theory that the conviction was tainted by evidence, which the jury heard, relating to the counts on which it acquitted. See, e.g., *United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir.1985). It is not like a case where evidence of other crimes is admitted in violation of Fed.R.Evid. 404 and the question is whether the error is harmless. See, e.g., *United States v. Davis*, 838 F.2d 909, 914–17 (7th Cir.1988); *United States v. Shackleford*, 738 F.2d 776, 783–84 (7th Cir.1984). No rule of evidence is violated by the admission of evidence concerning a crime of which the defendant is acquitted, provided the crime was properly joined to the crime for which he was convicted and the crimes did not have to be severed for purposes of trial. It makes no difference, moreover, whether the jury acquits on some counts or the trial or reviewing court sets aside the conviction on those counts. See *United States v. DiCaro*, 772 F.2d 1314, 1320 n. 4 (7th Cir.1985). As explained in *DiCaro*, the time to decide whether it is fair to subject a defendant to a single trial for a variety of crimes, given the risk that evidence introduced to support some of these crimes may infect the jury's consideration of the others, is before trial, when the defendant can complain of misjoinder under Fed.R.Crim.P. 8(a) or move for a severance under Rule 14. There is no doctrine of retroactive misjoinder, with possible exceptions that are inapplicable to this case. See, e.g., *United States v. Velasquez, supra*, 772 F.2d at 1354–55; *United States v. Dounias*, 777 F.2d 346, 348–49

(7th Cir.1985); *United States v. Schwartz*, 787 F.2d 257, 264 (7th Cir.1986).

Anyway, there would have been no basis for either a finding of misjoinder or a severance. The mail fraud charges arose out of the same overall scheme as the extortion and RICO charges, and the evidence of mail fraud was not of the inflammatory sort that might have swayed the jury to convict Holzer of the other charges even if the evidence had not supported those charges. Every item of evidence introduced at Holzer's trial would have been admissible, and almost certainly would have been admitted, even if all he had been charged with was extortion and racketeering; so the failure to sever was not only harmless in law but harmless in fact as well. The alleged extortion was Holzer's use of his position as a judge to extract, both from lawyers with cases before him and persons seeking appointment as receivers by him, money that most of the time was in the form of loans that Holzer contended were bona fide arm's length transactions and not bribes at all. Every bit of evidence that went in to show that Holzer was depriving the community of its right to an honest judge also showed that he was using his office to shake down persons with business before him. This is true even though in several instances Holzer was convicted of mail fraud but acquitted of extortion concerning the same transaction. For example, he makes much of the fact that the jury acquitted him of extortion from receiver Schatz—which it did for the very good reason that Schatz was dead and therefore could not testify that the judge had used his official position to obtain the loans—but convicted him of mail fraud in obtaining the loans. However, Schatz had received, arguably in exchange for these loans, repeated appointments by Judge Holzer as a receiver; and in combination with all the evidence showing the aggressive tactics that Holzer used with lawyers and would-be receivers to extract loans, the jury was entitled to infer, though it chose not to, that Schatz, too, had yielded to an implicit threat that if he didn't lend money to Holzer he wouldn't get any more receiverships. Holzer fired another receiv-er, Worsek, when Worsek demanded repayment of one of his loans. The same might well have happened to Schatz, who between 1979 and 1983 wrote checks to Holzer totaling $18,300, which was $10,000 less than the receiver fees that Holzer awarded him during this period. Holzer's defense against the extortion counts could not have been harmed by the admission of evidence used to convict him for mail fraud but admissible for both purposes.

To be convicted of racketeering, Holzer had first to be found guilty of at least two "predicate offenses." The indictment charged six predicate offenses other than mail fraud, including three receipts of bribes from Worsek and three acts of extortion. None of the bribes, and only one of the acts of extortion, was charged as a separate crime. The jury convicted Holzer of the predicate extortion offense that was charged as a separate crime. That conviction provides one of the two struts that the government needs to support the racketeering conviction. The jury also convicted Holzer of extortion from Worsek; and although this extortion was not charged as a predicate offense, the government argues that the receipt of bribes from Worsek, which was charged as a series of three predicate offenses, was a lesser included offense of the extortion from Worsek and therefore the jury must have found Holzer guilty of bribery as well. If so, the requirement that the defendant have been found guilty of at least two predicate offenses in order to support a conviction of racketeering was satisfied.

Holzer argues that even if we were certain that the jury had found him guilty of two or more predicate offenses, we could not uphold his conviction for racketeering, because the jury may not have used those offenses as the predicates of that conviction. It may have used one or more of the mail fraud convictions as the predicates. However, a jury is presumed to act rationally, and a rational jury would convict a defendant of racketeering if all the elements of the crime, one of which is that the defendant have committed at least two predicate offenses, were proved. Nothing

in the RICO statute gives, and nothing in the jury instructions gave, the jury any discretion to pick and choose among predicate offenses. Even if it had exonerated Holzer of all the predicate offenses charged except one act of extortion and one receipt of a bribe, it would have had to convict him of racketeering. (This is provided of course that the other elements of the offense are satisfied. But Holzer makes no argument either that the predicate extortion count and the Worsek bribery were insufficiently related to constitute a "pattern of racketeering" within the meaning of the statute, on which see *Tellis v. United States Fidelity & Guaranty Co.,* 826 F.2d 477 (7th Cir.1986), or that the three bribes were so closely related to each other that they cannot count as separate predicate offenses for purposes of counting to two, on which see *United States v. Horak,* 833 F.2d 1235, 1240–41 (7th Cir.1987).) Thus, conviction of mail fraud was not a necessary condition of conviction of either extortion or racketeering.

Justice White has said that there is a conflict among the circuits on the question whether a RICO conviction may stand when some of the defendant's convictions for the predicate offenses are overturned but two or more are not. See *McCulloch v. United States,* — U.S. ——, 108 S.Ct. 337, 98 L.Ed.2d 364 (1987) (White, J., dissenting from denial of certiorari). However, the only decision we can find that reversed a conviction on this ground, *United States v. Brown,* 583 F.2d 659 (3rd Cir.1978), contains no suggestion that the jury would have been acting irrationally if it had acquitted the defendant of the racketeering charge even though two predicate offenses were properly proved; whereas in both *United States v. Anderson,* 809 F.2d 1281, 1284–85 (7th Cir.1987), and *United States v. Peacock,* 654 F.2d 339, 348 (5th Cir.1981), where racketeering convictions were upheld, the jury would have been acting irrationally to have done this. We doubt whether the Third Circuit would overturn the conviction in such a case, and if this conjecture is right there is no conflict.

Would the jury have been irrational to acquit Holzer of racketeering had it not had the mail fraud convictions on which to base the racketeering conviction? The government argues that bribery is a lesser included offense of extortion, so that the conviction of Holzer for extortion from Worsek necessarily implies that the jury thought him guilty of accepting bribes from Worsek. The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The recurrent question in dealing with extortion by public officials is not whether every extortion implies a bribe, but whether every bribe implies extortion. Clearly, wrongful use implies something more than the passive receipt of a bribe, but invariably the extortion charged in public-official cases, such as this one, is the obtaining of property under color of official right; and while some courts require proof that the defendant made a demand for the property, see, e.g., *United States v. Aguon,* 813 F.2d 1413, 1418 (9th Cir.1987), this court, as noted in our first opinion, does not, see 816 F.2d at 310–11. In this circuit, "extortion 'under color of official right' equals the knowing receipt of bribes; they need not be solicited." *Id.* at 311.

But all this means is that if Holzer accepted bribes from Worsek, he was guilty of extortion as well; it does not necessarily follow that if he extorted money from Worsek, he must have accepted a bribe from him. At least formally, bribery contains an element that extortion does not: that money was offered with the intention of influencing the recipient. See Perkins & Boyce, Criminal Law 533 (3d ed. 1982). This element was stated explicitly in the jury instructions on bribery. It could be argued, however, that every person who knuckles under to an extortionate demand does so intending to influence the extortionist not to carry out his threat, and that this should be enough to prove bribery. Yet there is some authority that one can be a victim of extortion but not a briber, *United States v. Shober,* 489 F.Supp. 393, 403 (E.D.Pa.1979);

## 1352

*Hornstein v. Paramount Pictures, Inc.*, 22 Misc.2d 996, 37 N.Y.S.2d 404, 412–13 (Cty.Ct.1942), aff'd, 292 N.Y. 468, 55 N.E. 2d 740 (1944), and that would surely be right in a case where the victim had paid the extortionist at the point of a gun, though the present case is far removed from this, and perhaps in every case of extortion under color of right the extortionist is also a bribe-taker.

 We need not penetrate deeper into this interesting thicket; there is an independent reason why the racketeering conviction must be vacated. The count charging Holzer with extortion from Worsek lists six payments by Worsek. Three of these are the bribes charged as predicate offenses of bribery. The jury may have thought that the three payments charged as bribery were not bribes yet still have convicted Holzer of extortion on the basis of one, two, or all three of the other payments referred to in the extortion count. If so, the only predicate offenses of racketeering, other than the single predicate extortion count, that we can be sure the jury convicted Holzer of were the mail fraud offenses.

The government's charging strategy seems very odd. The racketeering count is a crazy-quilt. Some predicate offenses that are federal crimes and could therefore have been charged separately were not charged separately, so we have no idea whether the jury thought Holzer guilty of them; many offenses that were charged separately and could also have been charged as predicate offenses for racketeering were not; and now Holzer's racketeering conviction has fallen into the cracks and so must be vacated. If there is any rhyme or reason to the indictment, it eludes us.

 Although we uphold Holzer's conviction for extortion, we direct (in accordance with our usual practice, see, e.g., *United States v. Manzella*, 791 F.2d 1263, 1270 (7th Cir.1986)) that he be resentenced, since the judge conceivably may have given him a longer sentence because he erroneously believed that Holzer had committed another crime, mail fraud (and racketeer-

ing, the conviction of which we are also vacating). To summarize, we vacate Holzer's conviction of mail fraud with directions to acquit, vacate his conviction of racketeering with directions for a new trial (if the government wants to pursue the matter), and vacate his sentence for extortion with directions to resentence him.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.