**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Laurence I. GOODRICH, Defendant–Appellee.**

**No. 88–3491.**

United States Court of Appeals, Eleventh Circuit.

April 27, 1989.

---

Joseph D. Magri, U.S. Atty., Fran Carpini, Terry Zitek, Asst. U.S. Attys., Tampa, Fla. for plaintiff-appellant.

Lee Fugate, Clearwater, Fla., for defendant-appellee.

Laurence I. Goodrich, Tampa, Fla., pro se.

Before RONEY, Chief Judge, HILL, Circuit Judge, and TUTTLE, Senior Circuit Judge.

HILL, Circuit Judge:

## I. FACTS

On September 17, 1986, appellee Laurence Goodrich was indicted for his participation in a bribery scheme involving the Hillsborough County Board of County Commissioners ("Board"). He was indicted for racketeering and mail fraud. The stated object of the mail fraud scheme was to defraud the citizens of Hillsborough County of their right to the honest, faithful and disinterested services of the County Commissioners and of their right to have the business affairs of the Board conducted honestly, impartially, and free from deceit, corruption and fraud.

After the indictment was returned, the Supreme Court issued its decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), in which the Court held that a scheme to defraud the citizens of their intangible right to honest government does not constitute mail fraud. Under *McNally*, a scheme to defraud runs afoul of the mail fraud statute only if it is devised to defraud the victim of money or property. On the basis of *McNally*, Goodrich moved to dismiss the mail fraud count.

On August 20, 1987, before any ruling had been made on Goodrich's motion to dismiss the mail fraud count, a superceding indictment was returned against Goodrich in which he was again charged with racketeering and mail fraud. With respect to the mail fraud claim, the superceding indictment alleged that Goodrich had, by participating in the same bribery scheme, defrauded the citizens of Hillsborough County of three types of money and property: (1) the salaries, emoluments, and services of elected and appointed personnel of Hillsborough County, Florida, and the use of equipment of Hillsborough County, Florida, in the analysis, review, revision of planning and zoning records and consideration by the Board of County Commissioners and various departments and offices of Hillsborough County in regard to zoning petitions which were approved by the Board of County Com-

missioners because of payments of bribes in violation of Florida statutes;[1] (2) the value and proceeds of bribes paid to elected members of the Board of County Commissioners of Hillsborough County, Florida, to induce them to violate their duty to the government and citizens of Hillsborough County, Florida, of conducting the business of Hillsborough County, Florida, honestly, impartially, and free from deceit, graft, corruption, fraud, undue influence, dishonesty, and bribery, and; (3) control over the decision making process in regard to conferring the property right of regulating the density of residential property through amending the zoning of individual parcels of property thereby increasing the amount of residential units permitted on the parcel of property.

Specifically, the indictment alleged that between September 1982 and November 1982, Goodrich, a Florida attorney, devised a scheme in which he bribed three Hillsborough County Commissioners with the intent to influence them relating to a rezoning of real property.

The district court dismissed the mail fraud count of the superceding indictment. 687 F.Supp. 567. The district court addressed each of the three types of property listed in the mail fraud count and found that the government had presented no basis for distinguishing this case from *McNally*. The types of property listed in the indictment constituted, in essence, the same intangible right to honest government which *McNally* holds cannot be the basis of a mail fraud indictment. The United States filed a notice of appeal.

## II. DISCUSSION

This case is governed by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). As stated, *McNally* holds that the mail fraud statute does not apply to the intangible right of the citizenry to good government. We must decide whether the superceding indictment alleges a scheme to defraud a victim of money and property or, as the district court held, merely alleges, albeit in new language, a scheme to defraud the County and its citizens of their right to good government.

### A.

■ The first property interest allegedly defrauded by Goodrich is the "salaries, emoluments and services of elected and appointed personnel of Hillsborough County ...," or what the district court referred to as the "cost of sham commission meetings." In essence, this portion of the indictment alleges that the various commission meetings at which zoning petitions were considered were a mere charade because of the bribes paid to the County Commissioners. As pointed out by the district court, the indictment does not allege that the purported mail fraud caused the County to incur any expenses over and above the cost of conducting regularly-scheduled commission business. Instead, the government contends that the commissioner's salaries were paid and incidental expenses were incurred in conducting sham meetings designed to reach a result foreordained by the payments of bribes.

As the district court noted, this theory tends to find support in Justice Stevens' dissent in *McNally*[2], but is not endorsed by a majority of the Court. The dissent is not binding precedent. Moreover, we agree with the district court that the property interest alleged to have been denied the victim here—what the government contends Hillsborough County paid salaries for but did not get—is the "honest and faithful services" of the County Commissioners, an interest *McNally* held to be unprotected by the mail fraud statute. Thus, this "property interest" is indistin-

1. In its opinion, the district court referred to this type of property as "the cost of conducting 'sham' commission meetings."

2. Justice Stevens noted that "[w]hen a person is being paid a salary for his loyal services, any breach of that loyalty would appear to carry with it some loss of money to the employer—who is not getting what he paid for." 107 S.Ct. at 2890, n. 10 (Stevens, J., dissenting).

guishable from the intangible right to good government described in *McNally* and cannot sustain the mail fraud count.

### B.

■] The second property interest allegedly defrauded is "the value and proceeds of bribes paid to elected members of the Board of County Commissioners...." The government argues that any bribes paid to the individual commissioners are the property of the County, under a constructive trust theory. Although this theory also has some support in Justice Stevens' *McNally* dissent[3], the Court has not endorsed it. The Eleventh Circuit has not previously decided the issue. The district court in this case held that the constructive trust theory could not apply to bribery schemes such as the one presented in Goodrich's indictment. We agree.

Because neither the Supreme Court nor the Eleventh Circuit have addressed the application of a constructive trust theory to bribery schemes, the district court examined decisions from other circuits. The constructive trust theory has been applied in "kickback" cases where an employee or agent accepted payments which resulted in a direct economic loss to the principal. *See e.g., United States v. Fagan,* 821 F.2d 1002, 1009–1010 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 697, 98 L.Ed. 2d 649 (1988) (cost of kickback may be passed along to principal in form of increased costs for goods and services); *United States v. Richerson,* 833 F.2d 1147, 1157 (5th Cir.1987) (principal may be prevented from charging higher price for its own goods or services because an employee receiving payments is withholding that information).[4] However, the district court, relying primarily on *United States v. Holzer,* 840 F.2d 1343 (7th Cir.1988), found that the constructive trust theory could not be applied to bribery schemes.

In *Holzer,* a state trial judge had been convicted of, among other things, mail fraud. The indictment charged the judge with taking bribes in a scheme to defraud the State of Illinois and its citizens of the right to the honest administration of justice. The Seventh Circuit affirmed Holzer's conviction, *United States v. Holzer,* 816 F.2d 304 (7th Cir.1987), and Holzer petitioned for certiorari. While this petition was pending, the Supreme Court decided *McNally.* The Supreme Court remanded *Holzer* for reconsideration in light of *McNally.* —— U.S. ——, 108 S.Ct. 53, 98 L.Ed.2d 18 (1987). On remand, the same constructive trust argument was presented to, and rejected by, the Seventh Circuit.

As noted by the Seventh Circuit in *Holzer,* the constructive trust device is ordinarily used to require a person who has acquired property by fraud or other misconduct to convey it to the true owner. The *Holzer* court makes a well-founded distinction between taking one's employer's property by fraud, *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed. 2d 275 (1987) (employee who misappropriated confidential business information held liable for mail fraud), and failing to convey the receipts of bribery to one's employer. 840 F.2d at 1347. The bribes become the employer's property through the fiction of a constructive trust, not because the employer bargained for them, but to make sure the dishonest employee does not profit from them. *Id.* When the fiction is taken literally, the refusal to take a bribe becomes a deprivation of the employer's benefit, *id.,* a notion which varies dramatically from the original intentions of the constructive trust theory. The dishonest act which is said to have produced the County's property—the bribe—is also said to have deprived the County of its property. Because it found that only in an artificial

---

**3.** " '[I]f an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds to the principal'.... This duty may fulfill the Court's 'money or property' requirement in most kickback schemes." 107 S.Ct. at 2890, n. 10 (Stevens, J., dissenting) (quoting Restatement (Second) of Agency § 403 (1958)).

**4.** Both *Fagan* and *Richerson* rely on footnote 10 from Justice Stevens' dissent, *supra* note 3, for their holdings. *Fagan,* 821 F.2d at 1010–1011, n. 6; *Richerson,* 833 F.2d at 1157.

sense could a bribe be considered a principal's property, the *Holzer* court rejected the use of the constructive trust theory in mail fraud cases involving bribery. *See also, United States v. Ochs,* 842 F.2d 515 (1st Cir.1988) (rejecting "secret profits" theory and the cases which follow it); *United States v. Zauber,* 857 F.2d 137, 146 (3rd Cir.1988) (rejecting constructive trust theory as inconsistent with *McNally*); *United States v. Slay,* 858 F.2d 1310, 1316, n. 4 (8th Cir.1988) (rejecting application of constructive trust theory to persons accused of scheming to pay bribes).

Bribes are by definition illegal and can have no true owner, constructive or otherwise. The government has not come forward with any scenario in which the money allegedly paid to the individual commissioners as bribes could have legally found its way into the County coffers. There is no "property interest" shown to sustain the mail fraud count.

## C.

 The final property interest allegedly defrauded by Goodrich is the right of the citizens and government of Hillsborough County to have control over zoning decisions. The district court held that the government has not shown that the right to control zoning decisions is a property interest under Florida law. We agree.

Although the government points out that zoning decisions affect property and that arbitrary and capricious zoning decisions can constitute a deprivation of property without due process of law, the district court correctly noted that it does not follow that zoning decisions are themselves property. The cases cited by the government involve "vested rights" or equitable estoppel situations, whereby a property owner gains vested rights in the conduct or activity permitted under a permit or zoning ordinance, because of legal concerns for due process or equitable concerns in those instances where the property owner has substantially changed his position in reliance upon the issuance of such permit or the granting of such zoning classification. The case at bar does not involve either vested

rights or equitable estoppel. Zoning classifications affect the use of property, but they are not, in themselves, property. The right to control zoning decisions also cannot be considered property. Therefore, this right to control zoning cannot be the basis of a mail fraud count.

## III. CONCLUSION

*McNally* controls this case. The district court was correct in dismissing the mail fraud count of the superceding indictment.

AFFIRMED.