UNITED STATES of America,
Plaintiff–Appellee,

v.

Brad J. WILKUS, Defendant–Appellant.

No. 88–1410.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1989.

Decided May 30, 1989.

**650**

William T. Huyck, Chicago, Ill., for defendant-appellant.

Stephanie L. Uhlarik, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, POSNER and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1987 a superseding indictment was filed against defendant Brad J. Wilkus who had been employed by the Chicago Mercantile Exchange ("CME") from June 1982 until April 1985 as the Telecommunications Manager. Beginning in 1981, CME decided to relocate to a new building at 30 South Wacker Drive in Chicago. It needed to acquire a largescale telecommunications network for its trading floor there. As the Telecommunications Manager, defendant was to assist in selecting and implementing the new trading floor telephone system. He was expected to obtain the best possible telecommunications equipment at the best possible price for CME.

In the fall of 1982, CME was considering the purchase of its telecommunications system from Interconnect Planning Corporation ("IPC"). However, CME was dissatisfied with the high prices IPC was charging for telephone handsets and confidencers, the latter being a device to screen out the background noise of the trading floor.

CME's senior vice president Glen Windstrup complained to defendant of the high prices IPC was quoting for the handsets and confidencers. Defendant stated that better prices were available for this equipment, and Windstrup consequently instructed him to obtain these components at a lower price from another source.

In late 1982, in the name of Illinois Telephone Systems ("ITS"), a dummy company devised to handle the purchase of the new telephone communications system at CME, defendant obtained from Walker Equipment Company a brochure and price list for telephone handsets. He later contacted Susan Walker–Johnson of that company for a price quote on the purchase of 5,000 telephone handsets, again referring only to his affiliation with ITS and not revealing that he was employed by CME. When dealing with Walker Equipment, defendant used the name Ben Trent and sent Walker Equipment the business card of Ben Trent as national sales representative for ITS. Defendant used the alias Ben Trent to conceal the fact that as well as being Telecommunications Manager of CME, he was the sole proprietor of ITS. In fact, except for one small customer whose name defendant could not remember, the only customer of ITS was CME.

Susan Walker–Johnson told defendant that 5,000 telephone handsets could be purchased from Walker Equipment; the distributor price was $25 per handset and its retail price was $32.50, while IPC was planning to sell its handsets to CME at $143 apiece. Although Walker Equipment would have been willing to sell the 5,000 handsets at $25 each directly to CME, Wilkus instead arranged for ITS to purchase

the handsets. Subsequently ITS charged CME $65.55 for these same $25 handsets.

In early 1983, defendant contacted Roanwell Corporation, which manufactured telephone confidencers. Defendant described himself as being with ITS and stated that ITS wanted to purchase 5,200 confidencers. It was arranged for ITS to become a Roanwell distributor in order to purchase the confidencers at $14.76 per unit, for which ITS later charged CME $25 apiece. Roanwell would have been willing to sell directly to CME at the $14.76 price, while IPC had offered CME such items at $60 apiece. Although ITS charged CME much lower prices for these products than IPC had quoted, had CME been aware of the information suppressed by Wilkus, it could have obtained the handsets and confidencers at the same prices the two manufacturers charged ITS.

Defendant also contracted to have the repairs on the telephone handsets done through ITS at a cost to ITS of $11 and later at $13.50 for each repair, whereas defendant had CME pay ITS $54 per repair. Through his scheme, defendant received $354,452.44 in profits from the sale of the handsets and confidencers by ITS to CME and from the repair charges CME paid ITS.

Defendant never informed CME that he was the sole proprietor of ITS because CME's conflict of interest policy precluded its employees from deriving any benefits as a result of transactions with CME. Consequently, when CME ascertained that defendant was ITS, he was promptly discharged.

The 13–count indictment charged defendant with violating the mail fraud statute (18 U.S.C. § 1341) through the above-described scheme. The first 10 counts dealt with CME checks mailed to ITS to pay for the telecommunications equipment and repairs. The remaining 3 counts charged defendant's mailing of ITS checks to Walker Equipment. After a jury trial, defendant was found guilty on all 13 counts of the indictment. Defendant received a total sentence of one year and a day plus five years' probation. He was also ordered to make restitution of $350,000 to CME and $25,000 to the State of Illinois[1] and was required to provide 300 hours of community service.

On appeal he claims that two jury instructions were improper and that the trial judge should have received the affidavit of Robert Old, CME's director of finance, as substantive evidence.

## Analysis

### I. Constructive Trust Instruction

■ Defendant's principal argument attacks the following constructive trust instruction given by the district court:

An employee has no right to money acquired through an intentional breach of his duty to his employer; that money properly belongs to the employer to whom the employee has the duty. (Tr. 917).

If Wilkus had been indicted and the case had been tried under the above instruction, and if that instruction had stood alone, his argument might succeed under *United States v. Holzer*, 840 F.2d 1343 (7th Cir. 1988).[2] However, the crucial instruction in this case contained the following three requisites for conviction:

Now, to sustain the charge of mail fraud the Government must prove the following propositions: First, that the defendant knowingly devised the scheme to defraud and obtained money from Chicago Mercantile Exchange by means of false pretenses, representations or promises, as described in the indictment.

Second, that for the purpose of carrying out the scheme or attempting to do so, the defendant used the United States

---

1. The reason for the $25,000 payment to Illinois has not been explained by the parties.

2. In *Holzer,* this Court refused to follow *United States v. Runnels,* 833 F.2d 1183 (6th Cir.1987), where the court of appeals affirmed the mail fraud conviction on a constructive trust theory even though no such instruction had been given to the jury nor had such an argument ever been advanced by the government. See dissenting opinion of Judge Guy, 833 F.2d at 1194. In *Holzer,* too, no constructive trust instruction had been given and the case had been tried under the now discredited "intangible rights" theory.

mails, or caused the United States mails to be used in the manner charged in the particular count.

Third, that the defendant did so knowingly and with the intent to defraud.

If you find from your consideration of all of the evidence that each of these propositions has been proved beyond a reasonable doubt then you should find the defendant guilty. (Tr. 916).

These three essentials were devoid of any reference to a constructive trust. Similarly, the indictment was not based on such a theory. Finally, the evidence showed that the CME had been defrauded of $350,000 under defendant's scheme. Consequently, this case contains all the tangible rights elements required by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In such a setting the criticized instruction was mere surplusage.

■ Even accepting Wilkus' principal defense, the result remains the same. Wilkus argues that neither Walker Equipment nor Roanwell would sell the communications equipment to a non-distributor [3] and, according to Wilkus' testimony regarding an alleged conversation with his supervisor Robert Old,[4] CME was unwilling to become a distributor. Thus, argues Wilkus, his scheme did not defraud CME of property; rather it merely exploited an opportunity that CME had declined to assume.

Wilkus' argument ignores a crucial distinction. His opportunity for tangible gain was enhanced by the fact that, as he testified, he was the sole "bargaining" representative for both ITS and CME; consequently, no bargaining ever really occurred. He further testified that "if [CME] would have asked, [he] probably would have reduced the price" to CME by up to $100,000 (Tr. 786). This scheme is not, as Wilkus contends, simply usurpation by an employee of an opportunity already declined by his employer, but rather is a garden-variety fraud, akin—if not identical—to bid-rigging. Had Wilkus, the pur-

chasing agent, conspired with a seller to rig a bidding process and then split the inflated profits from the sale, without doubt CME would be deemed to have suffered a tangible loss. See, *e.g.*, *Moore v. United States*, 865 F.2d 149 (7th Cir.1989). It is entirely disingenuous for him now to argue that simply because he was both purchasing agent and seller, and thus retained all the profits inuring from the sales occasioned by his unilateral acts as opposed to having to split the profits with a co-conspirator, he did not deprive CME of money, but only exploited an opportunity known and declined. The constructive trust instruction, aside from being cured by the remaining instructions, was superfluous because according to his own testimony, Wilkus' profits stemmed from a fraudulently inflated price.

## II. Intent to Defraud Instruction

■ Defendant next argues that it was erroneous for the district court "to refuse to instruct the jury that the defendant must intend to deprive the victim of money or property" (Br. 13). However, this argument overlooks the following instruction that Judge Nordberg gave previously:

A "scheme" means some plan or course of action intended to deceive another and to deprive another of something of value by means of false pretenses, representation or promises. (Tr. 917).

Such an instruction was approved in *United States v. Wellman*, 830 F.2d 1453, 1463 (7th Cir.1987). In view of this instruction and the above-quoted three requisite instructions, it is futile for defendant to assert reversible error based on the "result" phrase in the following intent to defraud instruction:

The phrase "intent to defraud" means that the acts charged were done knowingly, with the intent to deceive the Chicago Mercantile Exchange, which result-

---

**3.** This was disputed, however, by witnesses from Walker Equipment and Roanwell. Moreover, this also ignores the fact that the two suppliers' retail prices were reportedly lower than those of IPC.

**4.** See Part III *infra*.

ed in depriving the Chicago Mercantile Exchange of money. (Tr. 917).

Taken together with the other instructions, the jury plainly was told that in order to convict defendant of mail fraud, it had to find that he intended to defraud CME of money. Thus in the context of the court's complete instructions as well as the evidence and arguments presented at trial, the jury was required to find that defendant intended to and did defraud CME in order to obtain money. The only plan charged in the indictment was that Wilkus schemed to obtain more than $350,000 from CME and converted the money to his personal use. This theory of the government's case never varied. Moreover, the evidence showed that defendant did act with an intent to defraud CME of money.

Considering the allegations of the indictment, the complete instructions, and the evidence, the jury must have found beyond a reasonable doubt that Wilkus acted with the requisite intent to defraud. If there was any error in the intent to defraud instruction,[5] it was certainly harmless under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), and *Rose v. Clark,* 478 U.S. 570, 576–579, 106 S.Ct. 3101, 3105–07, 92 L.Ed.2d 460 (1986).

### III. Exclusion of Robert Old's Affidavit

Defendant contends that it was reversible error for Judge Nordberg to refuse to admit in evidence an affidavit signed by defense witness Robert Old. We conclude that it was properly excluded as hearsay.

During the crucial events unfolding in this case, Robert Old, the director of finance of CME, was called as a defense witness. He stated that defendant was hired as CME's Telecommunications Manager in June 1982 and reported to Old until September of that year. He did not recall a conversation with defendant in late 1982 or early 1983 wherein Wilkus purportedly stated to Old that Wilkus had located alternate suppliers for the telephone handsets and confidencers that CME wished to purchase. At that point defense counsel showed Old an affidavit which he purportedly executed in October 1985 and asked if it refreshed Old's recollection as to the conversation in question. The affidavit stated as follows:

1. I am Vice President–Finance and Administration for the Chicago Mercantile Exchange ("CME").

2. During late 1982 through early 1983, Brad Wilkus as Telecommunications Manager, reported to me.

3. Sometime in late 1982 or early 1983, Wilkus came to me and explained that he had located alternate suppliers of the telephone handsets and confidencers the CME was seeking to purchase in connection with its move to its new facilities at 30 South Wacker Drive, Chicago, Illinois. He further stated that purchasing from these alternate suppliers would effect significant savings off the price then being quoted to us by Interconnect Planning Corporation for the handsets and confidencers.

4. Wilkus stated that the purchase from the alternate suppliers had to be done through a local distributor and asked whether the CME could set up a subsidiary corporation to act as such a distributor. I said it could not.

5. At no time up until the time of Wilkus' discharge was I aware that he had set up his own company to buy the handsets and confidencers from the alternate suppliers and, in turn, resell them to the CME at a substantial profit to himself. (Def.Ex. 3 quoted in part in Def.Br. 18–19).

Old stated that the affidavit did not refresh his memory and that it was apparently prepared by CME's outside counsel. Because he was then suffering from a disabling back ailment and had been out of his office for six weeks, Old could not remember anybody coming to his home in October 1985 and asking him to sign the affidavit. He also said that because of medication administered for treatment of his herniated disk, his faculties were impaired for an

---

**5.** The "result" phrase in the intent to defraud instruction was drawn from the opinion in *Unit-* *ed States v. Gimbel,* 830 F.2d 621, 627 (7th Cir.1987).

extended period of time, diminishing his ability to read, comprehend and understand documents. He could not recollect anything about the affidavit prior to seeing it two days before trial and could not recall how his signature appeared on the affidavit.

In ruling the affidavit inadmissible, the district judge found that there was insufficient evidence to show its accuracy and there was no circumstantial evidence of trustworthiness. He also ruled that the affidavit was not more probative than any other evidence which the proponent could procure, that the notice requirements of Federal Rules of Evidence 803(24) and 804(b)(5) were not fulfilled, and that justice would not be served by its admission. Defendant has not convinced us that any of the exceptions contained in Rules 803 and 804 of the Federal Rules of Evidence are applicable.

In ruling the affidavit inadmissible as a statement against interest, the district judge found that it was clear that Old was not an owner of CME nor had a direct financial interest in CME. However, he permitted Wilkus to testify to the subject matter of the conversation with Old as disclosed in the affidavit. Wilkus testified that he had a conversation with Old in his office during which Wilkus inquired as to the possibility of CME's becoming a direct distributor of the telephone equipment in question. Old responded in the negative since CME was a not-for-profit corporation. Wilkus then suggested to Old that CME develop a subsidiary to get the best possible price for the equipment but Old replied that this could not be done. Thus the vital parts of the Old affidavit were before the jury through Wilkus rather than Old.

#### A. Statements against Interest Hearsay Exception

■ In seeking reversal of the failure to admit the Old affidavit as corroborating his testimony, Wilkus relies on various provisions of Federal Rules of Evidence 803 and 804 including Rule 804(b)(3) which permits as a hearsay exception statements against interest. It provides in pertinent part as follows:

> *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

As the district court noted, Old had no pertinent pecuniary or proprietary interest, nor was the statement intended to subject him to civil or criminal liability. Since CME was not a party to the case, the affidavit was not against its interest nor, paraphrasing the rule, was the statement shown to be such that a reasonable person in Old's position would not have made it unless he believed it to be true. Judge Nordberg also thought that it was unlikely that Old had ever read the affidavit. Wilkus was simply unable to show that the affidavit was a statement against interest within the requirements of Federal Rule of Evidence 804(b)(3).

#### B. "Catch-All" Exceptions to Hearsay

The district court also refused to admit the affidavit under the catch-all exceptions to the hearsay rule contained in Rule 803(24) of the Federal Rules of Evidence, which provides as follows:

> (24) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial

or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Rule 804(b)(5), applicable when the declarant is unavailable, is identically worded. The conditions of neither have been satisfied.

■ As demonstrated by evidence of Robert Old's physical and mental conditions at the time the affidavit was apparently executed, the district court concluded that there was an insufficient showing of its accuracy. As noted previously, he was bedridden with a herniated disk, under medication and suffering a diminished ability to read and comprehend documents. He also had no recollection of the affidavit or of his signature on it. Because of this lack of mental capacity, the affidavit was properly excluded as inherently untrustworthy.

In addition to trustworthiness, these catch-all provisions also require that the statement be offered as evidence of a material fact, that it be more probative on the point than any other evidence, that it serve the interests of justice, and advance notice to the adverse party. These catchall conditions were also not satisfied.

■ The affidavit does not constitute evidence of a material fact even though Wilkus may have discussed with Old savings to CME through buying the handsets and confidencers from alternate suppliers instead of IPC. This does not excuse defendant's setting himself up as an alternate supplier through ITS and then purchasing the equipment from Walker Equipment and Roanwell at the lowest possible prices and reselling the equipment to CME at much higher prices. CME would not have had to pay such high prices if defendant had disclosed the true facts. The conversation is not material since the proof at trial showed that CME could have purchased the equipment directly at lower prices without having to go through a distributor.

■ Likewise the affidavit is not more probative than any other evidence because the defendant testified along the same lines as the affidavit without any rebuttal testimony being tendered by the prosecutor. The evidence did not show how the affidavit was prepared or any remembrances of Old about it so that it cannot be said that the affidavit would be more probative than Old's testimony that was received.

■ Defendant contends that the admission of the affidavit would serve the interests of justice within the meaning of Rules 803(24) and 804(b)(5). Because the affidavit was unreliable in view of Old's mental and physical state at the time it was executed, the interests of justice would certainly not be served by its admission.

■ Finally under both Rule 803(24) and Rule 804(b)(5) a statement may not be admitted as a catch-all hearsay exception unless the proponent advises the adverse party in advance of trial of its intention to offer the statement and also provides its particulars. Here the government received no such notice. When the affidavit was shown to the government on the first day of trial, defense counsel did not inform the government that he intended to introduce the document, nor did the government ever agree to its being introduced. Therefore the district court correctly found that the notice requirement was also not satisfied.

The affidavit was properly excluded as inadmissible hearsay. Its reliability is certainly doubtful, Wilkus was able to testify as to its substance, and other evidence convincingly showed the falsity of the parts of the affidavit favorable to Wilkus.

The conviction is affirmed.