74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick EWING, Defendant-Appellant.
 No. 95-2009.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 6, 1995.
Decided Jan. 19, 1996.
 
 Before LAY,* CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Frederick Ewing and three others were indicted for mail fraud in violation of 18 U.S.C. Sec. 1341. Ewing served as the superintendent of the University of Chicago Hospital's physical plant department. From 1983 to 1991 he awarded numerous contracts for construction at the hospital in exchange for over $200,000 in bribes and kickbacks. At Ewing's direction, various contractors submitted false invoices to the hospital. The invoices were inflated to cover the costs of the bribes and kickbacks, plus additional funds for the contractors themselves. Ewing exercised his authority as the plant superintendent to approve payment on the invoices.
 
 
 2
 Ewing entered a plea of guilty to one count of mail fraud on October 26, 1994. On March 23, 1995, after an evidentiary hearing, the district court sentenced Ewing to forty-eight months imprisonment, to be followed by thirty-six months of supervised release, and restitution in the amount of $111,203.[1] Ewing appeals the eight-level increase in his offense level for the "value of the bribe[s]" under U.S.S.G. Sec. 2B4.1(b)(1) and the two-level increase for his role in the offense under U.S.S.G. Sec. 3B1.1(c). Ewing also challenges the constitutionality of 18 U.S.C. Sec. 1346.
 
 Value of the Bribes
 
 3
 The central contention of Ewing's appeal is that his guilty plea was limited to conduct that deprived the hospital of "honest services" in violation 18 U.S.C. Sec. 1346, rather than "money or property" in violation of 18 U.S.C. Sec. 1341.[2] Ewing asserts he thus cannot be sentenced for his conduct prior to November 18, 1988, which was used as relevant conduct in calculating the value of the bribes for purposes of U.S.S.G. Sec. 2B4.1(b)(1).[3] Based on our review of the indictment, the plea colloquy, and the record as a whole, we agree with the district court that Ewing's conduct from 1983 to 1991, to which he pled guilty, constituted a violation of 18 U.S.C. Sec. 1341, and was properly used as relevant conduct in calculating his sentence.
 
 
 4
 The charges of the indictment were clearly stated in terms of a violation of Sec. 1341. In United States v. Eckhardt, 843 F.2d 989 (7th Cir.), cert. denied, 488 U.S. 839 (1988), decided before the enactment of Sec. 1346, this court held that if one "easily separable" charge in the indictment is adequate to state a wire fraud offense under 18 U.S.C. Sec. 1343, other allegations of a fraud depriving people of intangible rights, subsequently deemed insufficient under Sec. 1343, "are mere surplusage, and do not taint the remainder of the indictment." Id. at 997. This rule applies with even more force in this case. First, the indictment as a whole was captioned "Violations: Title 18, United States Code, Section 1341." Second, Ewing pled guilty to Count Three of the indictment, which realleged Ewing's conduct from 1983 to 1991, and specifically charged Ewing with a violation of 18 U.S.C. Sec. 1341. Count Three did not charge a violation of Sec. 1346. Finally, paragraph 4 of the indictment, which did contain the allegation that Ewing deprived the hospital of "honest services," was expressly limited to "conduct occurring after November 18, 1988."
 
 
 5
 Our reading of the plea colloquy provides no evidence that Ewing effectively limited his plea to conduct actionable only under Sec. 1346. The government stated the evidence would show that Ewing engaged in a kickback scheme from 1983 to 1991 to "defraud the University of Chicago of money and property" as well as "honest services." (Plea Transcript, Oct. 26, 1994, at 15). The government also said its evidence would show that Ewing "took or was responsible for other people taking illegally [about $240,000] from the University of Chicago." Id. The evidence also would have shown Ewing "directed" contractors to "pad their bills to the University of Chicago Hospitals." Id. at 16. Ewing acknowledged all of this evidence was true, id. at 17, and we find it sufficient to sustain his guilty plea.[4]
 
 
 6
 We conclude Ewing's acknowledged conduct violated Sec. 1341. It was clearly sufficient to support the eight-level increase in his offense level for the value of the bribes under U.S.S.G. Sec. 2B4.1(b)(1).[5]
 
 Role in the Offense
 
 7
 Ewing also challenges the two-level increase he received for being an "organizer, leader, manager, or supervisor" of "criminal activity" under U.S.S.G. Sec. 3B1.1(c). Relying on United States v. Belletiere, 971 F.2d 961, 971 (3d Cir.1992), which held that an individual who made "a series of unrelated drug sales" could not be given an increase under Sec. 3B1.1, Ewing contends he cannot be an "organizer, leader, manager, or supervisor" because his actions amounted to nothing more than being a seller in a commercial transaction. We disagree. Ewing told contractors to "pad their bills ... to generate extra funds" for themselves and "directed certain contractors to lie if they were questioned about their payments to [him]." (Plea Transcript, Oct. 26, 1994, at 16). This evidence, which Ewing acknowledged as true, shows Ewing did much more than engage in "a series of unrelated sales" of access to the hospital's business, and is sufficient to support the district court's decision to give Ewing a two-level increase for his role in the offense under Sec. 3B1.1(c).
 
 
 8
 For the aforementioned reasons, the judgment of conviction of the district court is affirmed.
 
 
 
 *
 The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The government was unwilling to enter into a plea agreement on the terms Ewing sought regarding his sentencing. (Plea Transcript, Oct. 26, 1994, at 3). The 48-month prison sentence he eventually received exceeded the "worst case" offered to him by the government (33 to 41 months). Id. The court, however, warned Ewing that the maximum prison sentence was five years and the guidelines range would be determined by the court's rulings at the time of sentencing, id. at 12-14, and Ewing does not challenge his sentence on this basis
 
 
 [2]
 Effective November 18, 1988, Congress enacted 18 U.S.C. Sec. 1346, which provides that "the term 'scheme or artifice to defraud' [as used in Sec. 1341] includes a scheme or artifice to deprive another of the intangible right of honest services." In McNally v. United States, 483 U.S. 350 (1987), the Court held that Sec. 1341 is limited to proscribing mail fraud that deprives persons of money or property, not intangible rights, such as honest government services. Id. at 356-60. Section 1346 was enacted for the express purpose of reversing the holding of McNally
 This court has applied McNally retroactively, see Magnuson v. United States, 861 F.2d 166, 167 (7th Cir.1988), and thus any scheme to deprive a person or entity of "honest services" prior to the effective date of Sec. 1346 could not constitute mail fraud under federal law.
 
 
 [3]
 If the relevant conduct were limited to the period after November 18, 1988, Ewing apparently would have been held responsible for only $108,793 in bribes and kickbacks, which would have qualified for a six-level increase, rather than an eight-level increase, under U.S.S.G. Sec. 2B4.1(b)(1)
 
 
 [4]
 Nonetheless, Ewing contends he could not have deprived the hospital of money or property because he had no duty to the hospital, under either the hospital's policies or his contract with the hospital, to obtain the lowest cost bidder for the contracts he awarded. Further, Ewing argues, such a duty cannot be implied under United States v. Holzer, 840 F.2d 1343 (7th Cir.), cert. denied, 486 U.S. 1035 (1988)
 This contention is without merit. In Holzer, a state judge was tried under an "intangible rights" theory under Sec. 1341 for defrauding citizens, litigants, lawyers, and applicants for court appointments, by extracting bribes from lawyers and receivers. Although there was money and property involved, this court reversed the conviction because there was no identifiable financial victim of the fraud. This court also rejected a "constructive trust" theory of liability, under which the judge could be convicted for taking money he was holding "in trust" for the state, reasoning that "[i]t is ... only in an attenuated and artificial sense that the bribe is the [state government's] property." Id. at 1348. See also United States v. Walters, 997 F.2d 1219, 1227 (7th Cir.1993) (rejecting "a conclusion that any deceit that incidentally causes a loss to someone ... violates federal law").
 In Holzer, however, this court suggested the outcome would have been different if the defendant had been "accused of having diverted to his own pocket money intended for his employer." 840 F.2d at 1348. In this case, the loss suffered by the hospital was not "incidental." Instead, the money Ewing received as bribes flowed directly, if somewhat circuitously, from the coffers of the hospital for whom Ewing worked to Ewing. Thus, we find Ewing's fraudulent scheme to obtain money or property falls squarely within the proscription of Sec. 1341.
 
 
 [5]
 For these reasons, we do not need to address Ewing's argument that 18 U.S.C. Sec. 1346 is beyond the scope of Congress's commerce power