195 B.R. 156 (1996)
James R. MARSHALL, Trustee in Bankruptcy for Air Terminal Enterprises, Inc., Plaintiff,
v.
CITY OF ATLANTA, et al., Defendants.
Civ. A. No. 1:95-CV-1595-JOF.
United States District Court, N.D. Georgia, Atlanta Division.
March 29, 1996.
*157 *158 *159 *160 *161 *162 *163 James R. Marshall, Atlanta, GA, Frank X. Moore, Schwieger & Moore, Atlanta, GA, for Plaintiff.
Teri Ellis-Brown, Assistant City of Atlanta Attorney, Atlanta, GA, for Defendant City of Atlanta.

ORDER
FORRESTER, District Judge.
This matter is before the court on United States Bankruptcy Judge Robert E. Brizendine's *164 Report and Recommendation that the counts against Defendant Mack Wilbourn be dismissed for failure to state a claim. In addition, Defendant Wilbourn has moved this court to withdraw the reference to the bankruptcy court due to the presence of Racketeering-Influenced and Corrupt Organization ("RICO") and state law claims in the debtor's petition.
I. JUDGE BRIZENDINE'S REPORT AND RECOMMENDATION
In his Report and Recommendation, Judge Brizendine recommended that Defendant's motion to dismiss be granted. After careful consideration and since there are no objections, this court ADOPTS Judge Brizendine's Report and Recommendation.
II. MOTION TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT
In his motion to withdraw the reference from the bankruptcy court, Defendant Wilbourn argued that withdrawal is mandated because of the RICO and state law allegations against him. Defendant Wilbourn presented both the motion to withdraw the reference and the motion to dismiss to Judge Brizendine, who recommended that the motion to dismiss be granted. Since Defendant Wilbourn failed to object to the Report and Recommendation, this court assumes that Defendant has abandoned his motion to withdraw the reference in favor of the alternative motion to dismiss. Accordingly, Defendant's motion to withdraw the reference is DENIED.
III. CONCLUSION
Defendant Wilbourn's motion to withdraw the reference [1-1] is DENIED. Judge Brizendine's Report and Recommendation [2-1] is ADOPTED. Defendant Wilbourn is DISMISSED from the action.
SO ORDERED.

UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

CASE NO. A92-74152-REB

ADVERSARY PROCEEDING NO. 93-6941

IN RE: AIR TERMINAL ENTERPRISES, INC., Debtor.

JAMES R. MARSHALL, Trustee in Bankruptcy for AIR TERMINAL ENTERPRISES, INC., Plaintiff,

v.
CITY OF ATLANTA, DOBBS PASCHAL MIDFIELD CORPORATION, IRA JACKSON, MACK WILBORN a/k/a McKINLEY WILBORN, ROBERT HAROLD ECHOLS, SR., and WILLIAM E. BROOKS, Defendants.
ORDER DETERMINING NON-CORE STATUS AND REPORT AND RECOMMENDATION OF DISMISSAL OF AMENDED COMPLAINT AS AGAINST CO-DEFENDANT MACK WILBOURN
ROBERT E. BRIZENDINE, Bankruptcy Judge.
This adversary proceeding is before the Court on the renewed motion of Co-Defendant Mack Wilbourn to dismiss or, in the alternative, for a more definite statement.[1] Upon consideration of these matters, the Court recommends that the motion be granted and that the complaint be dismissed as against this defendant.
In his complaint, Plaintiff-Trustee seeks an award of money damages, including punitive damages, against the above-named co-defendants under several causes of action. The allegations asserted against Mack Wilbourn are based on the following theories of relief: (Count I) federal Racketeer Influenced and Corrupt Organizations Act (RICO), as set forth in 18 U.S.C. §§ 1961-1968; (Count II), Georgia RICO, as set forth at O.C.G.A. §§ 16-14-1 to -15 (Michie Supp. 1994); and (Count V) tortious interference *165 with business relations. These allegations generally center around operations of the subconcessionaire program at Atlanta Hartsfield International Airport.
By previous order, this Court granted Plaintiff's motion to amend complaint and deferred Wilbourn's motion to dismiss same. See Order of June 27, 1994. After Plaintiff filed such amended complaint, Wilbourn filed a renewed motion to dismiss or, in the alternative, motion for a more definite statement.[2] Now that Plaintiff has finally pled his claims in his amended complaint, the sufficiency of his allegations can be tested under Fed. R.Bankr.P. 7012, which incorporates Fed. R.Civ.P. 12(b)(6), and Wilbourn's motion is ripe for consideration.
The Court must first determine whether this action constitutes a core or a non-core proceeding. This determination will dictate the appropriate form in which the Court shall enter its ruling herein.[3] In accordance with 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and determine "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11" as referred by the district court under Section 157(a). See also LR 265-1(a), N.D.Ga. In a core proceeding, the Court may enter a final order subject to review on appeal. If this suit is a non-core matter, the Court can still hear it in accordance with Section 157(c)(1), but absent consent of the parties, proposed findings of fact and conclusions of law as to dispositive matters, such as dismissal under Fed.R.Civ.P. 12(b)(6), would need to be submitted to the district court in the form of a recommendation. See generally THB Corp. v. Essex Builders Co. (In re THB Corp.), 94 B.R. 797, 803 (Bankr.D.Mass.1988); see also Providers Benefit Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.), 734 F.2d 794, 796 (11th Cir.1984).
Core proceedings are defined in Section 157(b)(2)(A)-(O) in terms of a non-exclusive list of examples. By contrast, a non-core proceeding is a matter that is not a core proceeding but is "otherwise related to a case under title 11." See 28 U.S.C. § 157(b)(3). Plaintiff-Trustee's RICO claims against Wilbourn, who is not asserting a claim against this bankruptcy estate, do not readily fall within any of the categories of core proceedings set forth in Section 157(b)(2). The predominant view in the case law appears to support the conclusion that RICO claims are in the nature of non-core, related proceedings. See e.g. Barnett v. Stern, 909 F.2d 973, 979-81 (7th Cir.1990); Marill Alarm Systems, Inc. v. Equity Funding Corp. (In re Marill Alarm Systems, Inc.), 81 B.R. 119, 123 n. 8 (S.D.Fla.1987), aff'd without op., 861 F.2d 725 (11th Cir.1988).[4] Undoubtedly, any recovery by Plaintiff in this action would affect the bankruptcy estate in terms of the *166 amount of funds available for distribution to claim holders, but such an eventuality is not determinative.
The following test has been used in contrasting "core" and "related" or non-core proceedings:
If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an `otherwise related' or non-core proceeding.
Barnett, supra, 909 F.2d at 981, quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir.1987) (emphasis in original); see also Gower v. Farmers Home Administration (In re Davis), 899 F.2d 1136, 1140-41, reh'g denied, en banc, 908 F.2d 980 (11th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990) (quoting same in non-RICO context). RICO claims do not invoke a substantive right provided by title 11 nor do they arise only in the context of a bankruptcy case. Barnett, supra, 909 F.2d at 981. Based on the above discussion, the Court concludes that Plaintiff's RICO claims against Wilbourn constitute a non-core matter.[5]
As previously noted, Wilbourn has also filed a motion for withdrawal of the reference of the above-styled adversary proceeding. See 28 U.S.C. § 157(d). Under Fed.R.Bankr.P. 5011(c), a motion to withdraw the reference does not automatically stay administration of this bankruptcy case or this adversary proceeding. Even though this motion has not been forwarded to the district court, this Court is not prohibited from acting and in fact is required to consider whether a claim has been sufficiently pled before such a motion is transmitted. Accordingly, those matters addressed herein are being considered before transmission of the motion to withdraw the reference to the district judge. See generally Auto Specialties Mfg. Co. v. Sachs (In re Auto Specialties Mfg. Co.), 134 B.R. 227, 228-29 (W.D.Mich. 1990); see also Solomon v. Security Pacific Bank Nevada (In re Nady), 138 B.R. 608, 610 (D.Nev.1992); Citicorp North America, Inc. v. Finley (In re Washington Mfg. Co.), 128 B.R. 198, 200-01 (Bankr.M.D.Tenn.1991).
Having addressed the jurisdictional nature of Plaintiff's claims, the Court will next consider Wilbourn's motion wherein he seeks the dismissal of Plaintiff's amended complaint pursuant to Fed.R.Bankr.P. 7012(b)(2), (3), and (6) or, in the alternative, a more definite statement of the allegations asserted against him so that he might frame a response. See Fed.R.Bankr.P. 7012(e). With respect to Counts I and II, Wilbourn argues that the amended complaint fails to state a claim under federal or state RICO because it does not adequately allege: (1) that Debtor was injured by conduct prohibited by RICO; (2) that Wilbourn was a member of an enterprise as defined under RICO law; (3) that such alleged enterprise had a connection to interstate commerce; and (4) that Wilbourn engaged in specific conduct constituting a pattern of racketeering activity. Wilbourn further contends that Count V (tortious interference with business relations) fails to state a claim against him because the allegations show that he took no such action in preventing or making more burdensome Debtor's performance under a certain subconcessionaire agreement.[6]
A motion to dismiss may be granted if it appears that the plaintiff could not possibly prove any set of facts consistent with the allegations in his complaint upon which he would be entitled to relief. See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 249-50, 109 S.Ct. 2893, 2905-06, 106 L.Ed.2d 195 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, *167 2232-33, 81 L.Ed.2d 59 (1984). Further, in deciding such a motion, the court must accept plaintiff's allegations as true and all reasonable inferences must be viewed in his favor.
In Count I, Plaintiff alleges that Wilbourn and the other co-defendants herein violated federal RICO law as set forth in 18 U.S.C. § 1962(a), (b), (c), and (d) and that Debtor and its bankruptcy estate are thereby entitled to treble damages, attorney's fees, and costs pursuant to 18 U.S.C. § 1964. Section 1964(c) provides civil remedies for private litigants, who suffer injury to their business or property proximately caused by a violation of Section 1962.
The primary focus of a federal RICO offense is the commission of certain predicate acts or crimes, sufficiently related and continuous to form a pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5), in a manner forbidden by the RICO statutory provisions (18 U.S.C. § 1962(a)-(c)), and in connection with the conduct of an enterprise engaged in or affecting interstate or foreign commerce.[7] Simply stated, under federal RICO, it is unlawful "to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985), citing 18 U.S.C. § 1962(a)-(c). Further, a conspiracy to violate any of the aforesaid provisions is unlawful under Section 1962(d).
Under Section 1964(c), a private cause of action for damages may be asserted by persons who are injured in their business or property by reason of a RICO violation under Section 1962. Sedima, supra, 473 U.S. at 495, 105 S.Ct. at 3284. Unlike a criminal prosecution, in a civil RICO suit, a plaintiff must meet certain standing requirements by alleging a direct causal connection between his injury and the commission of the predicate acts. See Sedima, supra, 473 U.S. at 495-97, 105 S.Ct. at 3284-85. State of Georgia ex rel. v. Dairymen, Inc., 813 F.Supp. 1580, 1583 (S.D.Ga.1991); see also Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir.1988); Pelletier v. Zweifel, 921 F.2d 1465, 1497, reh'g, en banc, denied, 931 F.2d 901 (11th Cir.), cert. denied, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). In other words, in addition to factual or "but for" cause, a compensable injury under Section 1964(c) must have been proximately caused by sufficiently related and continuous predicate acts committed in connection with the conduct of an enterprise. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ("but for" causation is insufficient, a direct relation must be alleged between the injury asserted and the conduct alleged); Pelletier, supra, 921 F.2d at 1499; Morast v. Lance, 807 F.2d 926, 933 (11th Cir.1987); see also Sedima, supra, 473 U.S. at 497, 105 S.Ct. at 3285.
The federal RICO statute uses various words and phrases that have special legal meanings. See 18 U.S.C. § 1961. As used in Section 1962, for example, the term "enterprise" is defined as a "group of individuals associated in fact," who exhibit a "community of interest" and have a "continuing core of personnel." Windsor Plumbing Supply, supra, 170 B.R. at 532, quoting United States v. Errico, 635 F.2d 152, 156 (2d Cir.1980), cert. denied, 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981); see also United States v. Turkette, 452 U.S. 576, 581-85, 101 S.Ct. 2524, 2527-30, 69 L.Ed.2d 246 (1981); 18 U.S.C. § 1961(4). Although participation in criminal acts is necessary, federal RICO liability is premised upon a person engaging in such activity on behalf of or in relationship with another entity which constitutes an enterprise.[8]
*168 Racketeering acts may be used to establish an enterprise, but the separate existence of an enterprise consisting of an association with a common purpose and continuity of structure, distinct from the pattern of racketeering activity in which it allegedly has engaged, must be alleged. Windsor Plumbing, supra, 170 B.R. at 533, citing Turkette, supra, 452 U.S. at 583, 101 S.Ct. at 2528-29; see also NL Industries, Inc. v. Gulf & Western Industries, Inc., 650 F.Supp. 1115, 1128 (D.Kan.1986). In this circuit, the associational aspect has been eliminated in connection with claims arising under 18 U.S.C. § 1962(c) (conducting affairs of an enterprise through a pattern of racketeering activity), in the sense that the defendant and the enterprise can be one in the same. See United States v. Hartley, 678 F.2d 961, 986, reh'g denied, 688 F.2d 852 (11th Cir.1982), cert. denied, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); see also 18 U.S.C. § 1961(4). A sufficient nexus, however, must be alleged as between the racketeering activities and the affairs of the enterprise for claims arising under Section 1962(c). Hartley, supra, 678 F.2d at 991; see also United States v. Carter, 721 F.2d 1514, 1526 (11th Cir.), cert. denied sub nom. Morris v. United States, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984).[9]
In Section 1961(1), "racketeering activity" is defined to include, among others, criminal predicate acts or offenses such as mail fraud, wire fraud, and bribery. To assert a RICO violation, a "pattern" of such activity must be alleged. Although Section 1961(5) defines such a pattern as requiring at least two acts of racketeering activity occurring within ten years of each other, the United States Supreme Court has held that two isolated acts alone are not enough. Northwestern Bell, supra, 492 U.S. at 238, 109 S.Ct. at 2900. Instead, to constitute a "pattern," the alleged acts must be construed in terms of continuity plus relationship. See Sedima, supra, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.[10]
First, in determining whether sufficient continuity exists between the alleged predicate acts to constitute a pattern, the following factors are considered:
the number of predicate acts, their duration, the nature of the scheme they are designed to promote, the actual or potential number of victims, the nature of the scheme's objectives, the number of participants in the scheme, the potential for continued criminal activity, and whether the particular scheme is part of a broader set of criminal objectives.
Gulf & Western, supra, 650 F.Supp. at 1127. Continuity requires more than sporadic or isolated activity and can be formulated in either an open-ended fashion or with reference to a closed period. The open-ended standard requires a showing that the criminal conduct is likely to occur in the future, as when predicate acts constitute a regular way of doing business such that they "amount to or pose a threat of continued criminal activity." Windsor Plumbing, supra, 170 B.R. at 533, quoting Northwestern Bell, supra, 492 U.S. at 239, 109 S.Ct. at 2900-2901; accord United States v. Hobson, 893 F.2d 1267 (11th Cir.), cert. denied, 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990) (single defendant convicted for single shipment of controlled substance); see also United States v. Church, 955 F.2d 688, 693 (11th Cir.), cert. denied sub nom., Coppola v. United States, 506 U.S. 881, 113 S.Ct. 233, 121 L.Ed.2d 169 (1992).
Continuity in a closed period is demonstrated "by a showing of a `series of related predicates extending over a substantial period of time.'" In re Sahlen & Assoc., Inc. Sec. Litigation, 773 F.Supp. 342, 366 *169 (S.D.Fla.1991), quoting Northwestern Bell, supra, 492 U.S. at 242, 109 S.Ct. at 2902; see also Windsor Plumbing, supra, 170 B.R. at 533, citing Northwestern Bell, supra, 492 U.S. at 241-43, 109 S.Ct. at 2901-03.[11] Predicate acts which only extend over a few weeks or months are inadequate. See e.g. Aldridge v. Lily-Tulip, Inc., 953 F.2d 587, 593, reh'g, en banc, denied, 961 F.2d 224 (11th Cir.1992) (six months is too short). The period of time alone, however, is not always determinative as commonality of purpose, method, and result must also be alleged. See United States v. Alexander, 888 F.2d 777 (11th Cir.1989), cert. denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 643 (1990).
Secondly and as mentioned above, in addition to continuity, a relationship among the alleged racketeering predicate acts must be established such that they form a "pattern." To allege a sufficient relationship, such acts "must involve common perpetrators, methods of commission, victims, or motives." Gulf & Western, supra, 650 F.Supp. at 1127. In other words, as stated by the Supreme Court, quoting 18 U.S.C. § 3575(e) by analogy, criminal conduct forms a pattern "if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or [such acts] are otherwise interrelated by distinguishing characteristics. . . ." Sedima, supra, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.
Mindful of the definitions discussed above, a defendant commits a RICO violation by engaging in racketeering activity in one of four different ways as set forth in Section 1962(a)-(d). First, Section 1962(a) provides generally that it is a crime for anyone to use or invest proceeds, which were derived from a pattern of racketeering activity in which that person has participated, to acquire an interest in or to establish or operate an enterprise engaged in interstate commerce. Further, under federal RICO, it must be shown that the investment itself, as opposed to the underlying acts of racketeering, caused the harm in issue. Dairymen, 813 F.Supp. at 1584; Sahlen, supra, 773 F.Supp. at 367.
Second, Section 1962(b) imposes criminal liability upon anyone acquiring or maintaining an interest in or control of an enterprise through a pattern of racketeering activity. Unlike Section 1962(a), a claim may be made under Section 1962(b) by alleging that the injury occurred as a result of the pattern of racketeering activity that was used to acquire an interest in or control of such an enterprise, as opposed to the acquisition itself. Sahlen, supra, 773 F.Supp. at 369; accord Gulf & Western Industries, supra, 650 F.Supp. at 1128; but see Moffatt Enterprises v. Borden, Inc., 763 F.Supp. 143, 145 (W.D.Pa.1990).
Third, Section 1962(c) prohibits anyone associated with an enterprise from knowingly conducting or participating in the conduct of its affairs through a pattern of racketeering activity. Generally, the defendant must have assisted an enterprise with knowledge of its illegal activities. Andreo, supra, 660 F.Supp. at 1370. Moreover, in Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court held that in order to participate in the affairs of an enterprise, the defendant must have played some part in directing or managing its affairs. The extent to which those who are not in upper management are vulnerable to such liability, however, remains to be seen. 507 U.S. at 184 n. 9, 113 S.Ct. at 1173 n. 9.
Finally, Section 1962(d) makes it unlawful to conspire to commit any of the aforesaid offenses under Section 1962(a)-(c). See Dairymen, supra, 813 F.Supp. at 1584; Sahlen, supra, 773 F.Supp. at 369-70; Gulf & Western, supra, 650 F.Supp. at 1128-29. As compared with an allegation under general conspiracy law, the objective of a RICO conspiracy is the violation of a substantive RICO provision. Carter, supra, 721 F.2d at *170 1529. Allegations of a conspiracy must be sufficiently detailed to enable defendants to identify the conspiracy of which they are alleged to be a part. Accord Durham, supra, 847 F.2d at 1511 (discussing RICO, particularity requirement under Fed.R.Civ.P. 9(b), and concept of notice pleading); see also Windsor, supra, 170 B.R. at 535 (with respect to averments of fraud, the role of each defendant in the scheme must be specified). A mere conclusory allegation that certain parties conspired to violate Section 1962(a), (b), or (c) is insufficient. Sahlen, supra, 773 F.Supp. at 370. At a minimum, an agreement to commit the predicate acts must be alleged, but since a RICO conspiracy agreement more precisely relates to the agreement to participate in an enterprise as opposed to the commission of the predicate crimes, it is not necessary that each defendant agreed to commit two predicate acts. Dairymen, supra, 813 F.Supp. at 1584; accord Carter, supra, 721 F.2d at 1530, citing United States v. Elliott, 571 F.2d 880, reh'g denied, 575 F.2d 300 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).
A RICO conspiracy agreement in violation of Section 1962(d) can be asserted in several ways depending upon the nature of the objective of the conspiracy. Church, supra, 955 F.2d at 694. First, a defendant may knowingly agree to become a member of a conspiracy with a RICO objective that contemplates the violation of a substantive RICO provision through the commission of predicate acts sufficient to constitute a pattern of racketeering activity in relation to an enterprise. Carter, supra, 721 F.2d 1514, 1529-31, citing Elliott, supra, 571 F.2d 880. In certain circumstances, an agreement to commit such predicate acts or offenses may be inferred from allegations of an agreement to commit the fraudulent scheme underlying such predicate acts. Church, supra, 955 F.2d at 695; Dairymen, supra, 813 F.Supp. at 1584-85. Such an agreement may also be inferred from conduct of the alleged conspirators or based on circumstantial evidence as when the totality of the allegations clearly suggest that a grand scheme or group-oriented operation was knowingly carried out by a number of individuals. When a RICO conspiracy agreement is present, it is not necessary that a particular defendant have further agreed to commit the predicate acts personally, and he need not have full knowledge of every detail regarding the acts committed in furtherance of the conspiracy by others. Carter, supra, 721 F.2d at 1530; Sahlen, supra, 773 F.Supp. at 369.
Secondly, by contrast, in the case of a single objective RICO conspiracy, which contemplates the commission of only one criminal act, the necessary agreement to a pattern of racketeering activity is absent. Thus, in order to allege a RICO conspiracy violation in such instance, plaintiff must establish the required pattern through allegations that defendant agreed to commit personally at least two predicate acts forming such pattern in furtherance of said single objective. See Church, supra, 955 F.2d at 694; Carter, supra, 721 F.2d at 1530-31; Sahlen, supra, 773 F.Supp. at 369.
Further, allegations of the completion of overt acts in furtherance of the conspiracy are ordinarily not required to establish criminal RICO liability under Section 1962(d). Carter, supra, 721 F.2d at 1528 nn. 20 and 21; United States v. Coia, 719 F.2d 1120, 1123-25 (1983), reh'g denied, 724 F.2d 978 (11th Cir.), cert. denied, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). When civil damages are sought pursuant to Section 1964(c), however, additional allegations are necessary to set forth a proper cause of action. As noted above, the complaint must contain allegations of an agreement to commit, or to the commission of, predicate acts forming a pattern of racketeering activity and that plaintiff suffered an injury proximately caused through the completion of such acts. Accord Windsor Plumbing, supra, 170 B.R. at 534; see also Carter, supra, 721 F.2d at 1528-31.
The legal standards under Georgia RICO law, O.C.G.A. § 16-14-1 et seq., as alleged in Count II of the amended complaint, are similar to the federal RICO provisions discussed above. In addition to various state law crimes, Georgia RICO includes crimes that are indictable under federal law (e.g. mail fraud) in its definition of predicate acts. See *171 O.C.G.A. § 16-14-3(9)(A)(xxix) (Supp.1994); Dairymen, supra, 813 F.Supp. at 1585.[12] Other conduct constituting racketeering activity includes influencing witnesses (O.C.G.A. § 16-10-93) and bribery (O.C.G.A. § 16-10-2). See O.C.G.A. § 16-14-3(9)(A)(xiv) and (xiii). Under O.C.G.A. § 16-14-6(c), Georgia law provides a civil remedy for injuries sustained as a result of a violation of O.C.G.A. § 16-14-4, similar to the federal remedy in 18 U.S.C. § 1964(c).
Georgia RICO is generally broader in scope than federal RICO. See Chancey v. State, 256 Ga. 415, 349 S.E.2d 717, 722-23 (1986), cert. denied, 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987); Dover v. State, 192 Ga.App. 429, 385 S.E.2d 417, 420 (1989). For instance, an alleged violation under O.C.G.A. § 16-14-4(a) does not depend on a relationship with an enterprise because liability extends to the acquisition of an interest in any property or money, in addition to an interest in an enterprise.[13] Further, unlike 18 U.S.C. § 1962(a) of federal RICO, Georgia RICO makes it unlawful to acquire proceeds through a pattern of racketeering without requiring further allegations of an injury specifically resulting from the subsequent investment of said proceeds in an enterprise. See O.C.G.A. § 16-14-4(a); Dairymen, supra, 813 F.Supp. at 1586. In addition, allegations of continuity between predicate acts are unnecessary. See Inter-Agency, Inc. v. Danco Financial Corp., 203 Ga.App. 418, 417 S.E.2d 46, 53-54 (1992); see also Kenny & Smith, supra note 8, at 550-54.
Before reviewing the sufficiency of Plaintiff's factual allegations under the above standards, the Court observes that Plaintiff's allegations as to the existence of an enterprise engaged in a pattern of racketeering activity rest, in large part, upon a 133 count criminal indictment purportedly signed by the United States Attorney for the Northern District of Georgia, to wit: United States v. Ira Jackson, Mack Wilbourn, et al., Criminal Indictment No. 1:93-CR-310, N.D.Ga., a copy of which is attached to the original complaint as Exhibit "A." See Plaintiff's Amended Complaint, ¶ 24.[14] The copy included in the record, however, bears no filing date and it does not appear to have been signed by a grand jury foreperson. The record herein also does not reflect the results of the grand jury's deliberations or whether these charges were entered and the overall status of this matter is unclear.[15]
The sufficiency of the aforementioned indictment as the basis for the claims pled herein by Plaintiff is problematical. Although it was purportedly signed by a United States Attorney, the indictment does not show the source or evidentiary foundation for making the allegations or how persons having knowledge of such claims were in a position to know the relevant facts concerning the scheme to defraud. Plaintiff merely incorporates the allegations into his complaint and same are not otherwise verified or confirmed.
Assuming that the criminal indictment is a sufficient basis to consider Plaintiff's allegations, the Court will review the factual allegations set forth in both the federal and Georgia RICO counts of the amended complaint. *172 Plaintiff asserts that the above-named defendants, in a scheme involving mail fraud, bribery, and political corruption, combined to infiltrate and influence the decision-making process of officials of the City of Atlanta in connection with the operation of the concessions program at Atlanta Hartsfield International Airport. Defendants, other than the city, allegedly created, maintained, and controlled an enterprise that generated significant economic benefits, which ostensibly were to benefit minority owned concessionaire interests. Additionally, the alleged enterprise jealously guarded its profits and used its power to keep the subconcessionaires on the brink of failure. Amended Complaint ¶ 11.
Specifically, it is alleged that certain subconcessionaire entities at the airport, in which some of the above-named defendants held an interest, were singled out for favorable treatment through the receipt of various benefits. These benefits consisted of free concession space plus rent and commissary credits and were the result of amendments to the principal concessionaire agreement between the City of Atlanta and Dobbs Paschal Midfield Corporation. Under this agreement, Dobbs Paschal was responsible for managing the concessions program at the airport on behalf of the city. The amendments had been designed to address and ameliorate complaints from subconcessionaires in regard to Dobbs Paschal's fee schedule and commissary program. Although the benefits contemplated by these amendments were intended to be provided to all subconcessionaires, based on the alleged massive scheme of bribery and corruption, Plaintiff alleges that said benefits were instead selectively and unfairly distributed and were withheld from those who were not a part of said enterprise.
As a result of this alleged scheme, businesses in which defendants had an interest flourished at the expense of subconcessionaires such as Debtor, who were denied additional concession space and rent and commissary credits. Amended Complaint ¶ 46. But for the racketeering acts of defendants, Plaintiff alleges, Debtor would have received these important benefits in connection with its business. See Amended Complaint ¶¶ 28-37. Further, in addition to obtaining favored treatment for subconcessionaires in which they held an interest, certain of the co-defendants allegedly illegally enriched themselves through bribes in connection with the distribution of these economic benefits. Amended Complaint ¶¶ 32 and 34.
During the time period in question, co-defendant Ira Jackson served as a member of the Atlanta City Council and also chaired the finance committee, in addition to serving as Commissioner of Aviation for the City of Atlanta. It is alleged that Wilbourn assisted Jackson in the hereinbefore-described scheme by aiding and abetting in Jackson's purchase and control of an interest in certain subconcessionaire entities. Further, while serving in the above-described official capacities, Jackson allegedly participated in and used his influence to favor airport subconcessionaires in which he held an interest.
Wilbourn allegedly assisted Jackson in concealing and failing to disclose this lack of financial disinterestedness by acting as a front man in a corporate entity known as Hartsfield Concessions. Through this entity, Jackson allegedly received dividends and management fees from his subconcessionaire interests through a process by which the illgotten proceeds were sent through the mails in the form of checks made payable to Hartsfield Concessions. See Amended Complaint ¶¶ 24, 27-35, and 52(c) and (d); Indictment ¶¶ 11g-i, 12, and 14.
Plaintiff further alleges that as a part of the criminal enterprise, co-defendant William Brooks, former president of Dobbs Paschal, used his authority to determine who would be the beneficiaries of the amendments to the concessionaire agreement between Dobbs Paschal and the City of Atlanta. Additionally, Brooks allegedly accepted bribes and granted advantageous economic terms to selected subconcessionaires operating at the airport, including co-defendant Robert Echols. Amended Complaint ¶¶ 35-37, 52(f). Moreover, realizing the profitability of Debtor's frozen yogurt business, the first of its kind at the airport, Brooks allegedly targeted it for destruction using the vast array of powers at his disposal.
*173 As an illustration of Brooks specific harassment of Debtor, under a pretext of Debtor's breach of its subconcessionaire agreement, Brooks allegedly limited the free space and rent credits to which Debtor claims he was entitled. Further, he allowed others to compete directly with Debtor's business in violation of Debtor's subconcessionaire agreement. In particular, Echols opened a frozen yogurt stand directly across from the location of Debtor's business. In a further attempt to injure Debtor's business, Brooks allegedly approved the building of a partition in front of Debtor's store, which decreased its visibility to airport patrons. See Amended Complaint ¶¶ 38-41. Brooks also allegedly imposed upon Debtor exorbitant fees pursuant to an obligatory commissary program under which subconcessionaires were required to store or purchase food supplies, while others through the payment of bribes were relieved from paying such fees. As a result of this alleged scheme, Plaintiff claims, Debtor's performance under its subconcessionaire agreement was made more expensive and burdensome and, ultimately, it was driven out of business. Amended Complaint ¶¶ 42-49, 61.
Applying the legal standards previously discussed to the factual allegations herein, the Court will now proceed to analyze the legal sufficiency of Plaintiff's federal and Georgia RICO claims. First, the Court will decide whether Plaintiff has sufficiently alleged that Wilbourn violated federal RICO law by engaging in a pattern of racketeering activity in a manner forbidden by Section 1962(a)-(c). For the limited purpose of undertaking this analysis, the Court will assume that the necessary underlying criminal predicate acts have been properly alleged, although this assumption is ultimately without validity and is more fully and critically examined hereinafter.
Section 1962(a) requires allegations pertaining to injury caused by investment of proceeds derived from a RICO enterprise. In paragraph 53 of Count I of the amended complaint, Plaintiff alleges that each defendant used income received from racketeering activity in the acquisition of an interest in or operation of an alleged enterprise in violation of Section 1962(a). His allegation, however, is conclusory and without sufficient factual support. Neither the complaint nor the indictment assert what specific benefit Wilbourn received from the alleged racketeering activity or how an investment by Wilbourn in the enterprise itself, as opposed to the underlying acts of racketeering, caused injury to Debtor. See Sahlen, supra, 773 F.Supp. at 367-69. As discussed above, Section 1962(a) only forbids use or investment of racketeering income in the manner proscribed therein and Plaintiff has failed to allege same.
Nonetheless, civil liability may attach under Section 1962(a) if, among other things, a defendant aids and abets another in the commission of at least two predicate acts in a manner prohibited by this subsection. To assert a proper claim under this theory, it must be alleged, with regard to each such act, that the defendant "was associated with the wrongful conduct, participated in it with the intent to bring it about, and sought by his actions to make it succeed." Sahlen, supra, 773 F.Supp. at 367-68. Additionally, liability for predicate acts based on mail fraud, for example, which is a specific intent crime, must be supported by allegations that the aiding and abetting defendant shared the principal's criminal intent in regard thereto. Id. at 368; Andreo, supra, 660 F.Supp. at 1371. But even under an aiding and abetting claim, again assuming that the predicate acts are sufficiently alleged, it must be asserted that monies obtained from a pattern of racketeering activity were used or invested in violation of Section 1962(a). Plaintiff's complaint is deficient in this respect with regard to Wilbourn. Sahlen, supra, 773 F.Supp. at 368-69.
This conclusion notwithstanding, one who aids and abets another in a violation of Section 1962(a) may still be liable on grounds of conspiring to violate this provision, even if he did not personally invest such income and would not otherwise have been liable for such an investment injury under Section 1962(a). Sahlen, supra, 773 F.Supp. at 369 n. 36. In the present case, however, there are no allegations that Wilbourn assisted, agreed to assist, or conspired to assist Jackson or anyone else through such prohibited *174 use or investment in violation of Section 1962(a).
The viability of a claim for relief under Section 1962(b), acquiring control of a RICO enterprise, is equally problematical as stated in paragraph 54 of the amended complaint. For instance, no factual detail is provided regarding how Wilbourn's involvement in the alleged predicate acts resulted in his acquiring or maintaining an interest in or control of the enterprise. At most, it is alleged that he profited from the sale of a subconcessionaire interest to Jackson. Similarly, it is not clear that he benefitted from later efforts to conceal such interest. Likewise, there are no allegations that Wilbourn acquired any degree of control over the enterprise at any level.
Even if the Court were to conclude that it is unnecessary under this subsection to allege a nexus between such acquisition or maintenance and Debtor's injury, Plaintiff herein, as a civil RICO plaintiff, has failed to allege how sufficiently continuous indictable acts or racketeering activity of Wilbourn directly and proximately caused Debtor's injury. See Pelletier, supra, 921 F.2d at 1498-1500; Morast v. Lance, supra, 807 F.2d at 933; see also Sahlen, supra, 773 F.Supp. at 369. In accordance with this standard, to the extent he relies on a violation of Section 1962(b), including any possible aiding and abetting liability arising therefrom, Plaintiff has failed to allege a claim upon which relief may be granted against Wilbourn under Section 1964(c).
Similarly, Plaintiff's allegations under Section 1962(c), conducting an enterprise through a pattern of racketeering activity, suffer the same infirmity. Wilbourn's role in managing or directing the affairs of the alleged enterprise is not asserted. In addition, although an aiding and abetting claim may exist under this provision, Plaintiff's allegations concerning the causal connection between the underlying alleged predicate acts and Debtor's injury are insufficient. Accord Sahlen, supra, 773 F.Supp. at 368 n. 35; Andreo, supra, 660 F.Supp. at 1371. Accordingly, Plaintiff has not sufficiently alleged that Wilbourn committed a violation under Section 1962(c).[16] Based on the foregoing analysis, the Court concludes that Plaintiff has failed to allege a sufficient factual basis to assert a RICO violation by Wilbourn under Section 1962(a)-(c). Accordingly, Plaintiff's claim for civil damages pursuant to Section 1964(c), as set forth in Count I of the amended complaint, should be dismissed as against Wilbourn.
As mentioned above, for purposes of the above analysis, the Court has assumed the sufficiency of Plaintiff's allegations in connection with the criminal predicate acts recited in the amended complaint. This assumption, however, does not withstand scrutiny and Plaintiff's claims fail for this reason as well. RICO violations occur through a pattern of racketeering activity, and as defined and explained above, it must be alleged that the predicate acts, constituting such a pattern, directly and proximately caused Debtor's injury. Plaintiff, however, has failed to allege same with sufficient particularity.
The criminal offenses or predicate acts, which defendants allegedly committed, separately or in conspiracy with one another, arise under the following provisions: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 201 (bribery). See Amended Complaint ¶ 51.[17] In addition, Wilbourn and others allegedly aided and abetted co-defendant Ira Jackson in violating his fiduciary duties as a city official (paragraphs 51 and 52(c)), and along with Jackson, Wilbourn allegedly violated 18 U.S.C. § 1342 *175 (conducting a scheme or device or other unlawful business by means of the Postal Service while using a fictitious name). Amended Complaint ¶ 52(d).[18] Finally, in paragraph 52(e), it is alleged that Wilbourn attempted to corrupt certain testimony of Bernard Parks by attempting to obtain a false affidavit in violation of 18 U.S.C. § 1512(b)(1).
With respect to alleged predicate acts based on mail fraud, Plaintiff claims that Jackson and Wilbourn, aided and abetted by each other and through others, knowingly caused certain checks to, be delivered through the mails for the purpose of executing the scheme to defraud and in furtherance of the enterprise's racketeering activity. See Amended Complaint ¶ 52(d); see also Indictment ¶ 13 and 14.[19] To prove mail fraud under 18 U.S.C. § 1341, it must be alleged that Wilbourn intentionally participated in a scheme to defraud and that the mails were used in furtherance of said scheme. United States v. Downs, 870 F.2d 613, 615 (11th Cir.1989). The focus is on the deceptive activity and it is not necessary that the documents actually being transported contain fraudulent information. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1413-15 (3d Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); see also Schmuck v. United States, 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 reh'g denied, 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989).
The requisite knowledge or state of mind in connection with use of the mails is sufficiently alleged if completion of the scheme depended on documents passing through the mails and the defendant knew that such use would occur or such use could reasonably be foreseen. Moreover, in multiparty mail fraud schemes as claimed herein, an alleged participant may be held accountable for a mailing whether or not he specifically agreed to or knew of its commission under a conspiracy theory. See United States v. Dick, 744 F.2d 546, 552 (7th Cir.1984). Likewise, under a conspiracy to commit mail fraud, only a specific intent to defraud must be alleged as opposed to an intent to use the mails. United States v. Smith, 934 F.2d 270, 274-75 (11th Cir.1991).
In the present case, the transmission of checks through the mails, representing proceeds from certain subconcessionaire operations, to a corporate entity allegedly controlled by Jackson was apparently integral to the success of the aforesaid scheme, and use of the mails could have been foreseen by all involved. See Indictment ¶¶ 7, 11, and 14. In any event, whether or not Wilbourn participated in a scheme to defraud, and regardless of whether or not he knew of, could foresee, or was party to a conspiracy to defraud involving use of the mails, Plaintiff's allegations are insufficient.
As discussed hereinbefore, an injury is not compensable under Section 1964(c), unless the predicate acts alleged were both the factual and the proximate cause of the injury. See Sedima, supra, 473 U.S. at 497, 105 S.Ct. at 3285; Pelletier, supra, 921 F.2d at 1499; see also Holmes, supra, 503 U.S. at 264-70, 112 S.Ct. at 1316-18. The injury must flow directly from the commission of the alleged predicate acts. Pelletier, supra. In other words, a direct relation must be alleged between Debtor's injury and Wilbourn's participation in a scheme of deception involving use of the mails. To show such a connection, a private plaintiff, relying on mail fraud as a predicate act, must allege that he was an intended target of a fraudulent scheme and that he relied to his detriment on the misrepresentations made in furtherance of such scheme. See Pelletier, supra, 921 F.2d at 1498-1500; see also Dairymen, supra, 813 F.Supp. at *176 1583-84. Further, the time, place, and content of the false representations must be described as well as the identity of the person making them and the loss suffered thereby. Gulf & Western, supra, 650 F.Supp. at 1126.
The test for showing a causal connection between an injury and the alleged predicate acts, as formulated by the Eleventh Circuit in Pelletier, supra, 921 F.2d at 1499-1500, is subject to at least two interpretations. First, in Kingston Square Tenants Assoc. v. Tuskegee Gardens, Ltd., 792 F.Supp. 1566, 1578 (S.D.Fla.1992), the court held that the plaintiff himself must have been a target of and relied on a misrepresentation. In contrast, in Pine Ridge Recycling, Inc. v. Butts County, 855 F.Supp. 1264, 1274 (M.D.Ga.1994), the court determined that a plaintiff need not prove his own reliance, but may utilize a third party's reliance upon such misrepresentation.
Although eighty-three (83) specific checks are described as having been sent through the mails over a forty (40) month period (Indictment ¶ 14), applying either the Kingston Square or the Pine Ridge test, the Court concludes that Plaintiff has failed to set forth a private claim for damages using mail fraud as a predicate act. Although Debtor ultimately closed its business, it is not alleged how these acts of mail fraud, in which Wilbourn was involved, directly or proximately caused Debtor's injury.
Any injury suffered by Debtor's business as a result of Jackson's alleged concealment of his financial stake in the airport subconcessionaire program, his participation in the inequitable distribution of ameliorative benefits, and his receipt of checks through the mail, which made it profitable for him to continue such scheme, as aided and abetted by Wilbourn, even if true, is too indirect to be compensable under the holding of Pelletier, supra, 921 F.2d at 1499. First, Debtor was not alleged to be a target of the aforedescribed scheme to defraud by Jackson and Wilbourn. The fact that injury to the Debtor and those similarly situated was foreseeable as a result of the institution of a system that favored certain subconcessionaires over others regarding the distribution of benefits is insufficient. See Amended Complaint ¶¶ 27-32, and ¶ 61. Secondly, there are no allegations of specific injury incurred by reason of Debtor's reliance on any deception in which Wilbourn participated. Even under the less demanding test set forth in Pine Ridge, supra, Plaintiff herein has alleged no third party reliance in connection with Jackson and Wilbourn's scheme to defraud, which proximately caused Debtor's injury.
These deficiencies are not cured by construing Plaintiff's mail fraud claim in terms of allegedly aiding and abetting the breach of a fiduciary duty by a public official which resulted in the deprivation of an economic right or benefit. Under this theory, a defendant through use of the mails engages in a scheme of self-dealing, which defrauds his constituency of money or property in breach of the duties entrusted to him. In the present case, however, the indictment does not contain sufficient allegations with regard to such a claim, because it is not clear that the citizens of Atlanta would have otherwise been entitled to the monies Jackson received by virtue of his subconcessionaire interest. See also Amended Complaint ¶ 52(c).
Without a factual basis for the loss of money or property, the only remaining grounds for a possible mail fraud claim would be the deprivation of an intangible right to honest and impartial services pursuant to 18 U.S.C. § 1346. See generally United States v. Goodrich, 871 F.2d 1011 (11th Cir.1989).[20] *177 Although claims for deprivation of intangible rights evidently have renewed viability under Section 1346, Plaintiff has not alleged that Debtor suffered any particular or distinctive direct injury, apart from being a general member of the citizenry of Atlanta, entitling him to money damages from Wilbourn. Further, it does not appear that Section 1346 relieves a private plaintiff under Section 1964(c) from the standing requirements set forth in Pelletier, supra, 921 F.2d at 1499-1500. See also Holmes, supra, 503 U.S. at 268-70, 112 S.Ct. at 1318. Debtor stands at too remote a distance to recover money damages based merely upon the citizenry's alleged loss of honest services on behalf of a public official such as Jackson. Accordingly, based on the preceding analysis, the predicate act of mail fraud has not been sufficiently alleged in the amended complaint under any of the possible theories discussed above for purposes of stating a compensable claim for relief under the civil remedy provided by Section 1964(c).[21]
Having fully addressed the mail fraud claims as predicate acts and the Court having previously noted the apparent abandonment of the claims relating to wire fraud and bribery (note 17, supra), the remaining alleged predicate acts will be considered. First, Wilbourn allegedly aided and abetted Jackson in violating his fiduciary duties and in unlawfully influencing members of the city council in approving amendments to the principal concessionaire agreement. He also aided and abetted Jackson in concealing Jackson's financial interests in such matters. See Amended Complaint ¶¶ 28 and 52(c); see also Indictment ¶ 6. Additionally, Wilbourn allegedly attempted to corrupt the testimony of Bernard Parks by seeking to obtain a false affidavit in violation of 18 U.S.C. § 1512(b)(1). Amended Complaint ¶ 52(e).
Similar to the analysis of Plaintiff's claims concerning mail fraud, insufficient facts are alleged concerning how Debtor's injury directly flowed from the above-referenced predicate acts. Further, the remaining allegations in paragraphs 54 through 61 of the amended complaint are conclusory in nature and lack a proper factual basis to state a claim as they appear to merely track the language and requirements of the RICO statute. Accepting Plaintiff's allegations as true, at most, they only amount to an indirect injury which, as noted, is not compensable under Section 1964(c).
The only conduct alleged in the amended complaint that appears to have directly injured the Debtor consists of those actions taken primarily by Brooks and perhaps Echols. Amended Complaint ¶¶ 37-44, 46, and 48. For instance, whereas Wilbourn allegedly aided and abetted Jackson's violation of his fiduciary duties in concealing his interests and selectively distributing various ameliorative economic benefits to certain subconcessionaires, it is alleged that Brooks actively and specifically intended to harm Debtor's business. See Amended Complaint, ¶¶ 25, 36-49; see also United States v. William E. Brooks, Criminal Information No. 1:93-CR-000117, N.D.Ga., March 11, 1993, attached to original complaint as Exhibit "B." Yet, no commonality of purpose, motive, method, victim, or result has been suggested as between the alleged predicate acts committed by Wilbourn and those of Brooks and Echols to show that they are sufficiently related to constitute a pattern of racketeering activity.
Moreover, Plaintiff does not allege any interrelatedness between Wilbourn's alleged predicate criminal acts, subparagraphs 52(c), (d), and (e), and those predicate acts allegedly committed by Brooks as set forth in subparagraph 52(f). The latter allegations only address Brooks' acceptance of certain payments from Echols and use of the mails in *178 execution of their scheme to ensure that Echols benefitted from the aforesaid ameliorative amendments. Simply stated, Plaintiff has failed to allege a satisfactory connection between such harmful conduct and the activity in which Wilbourn allegedly engaged.
Based upon all of the foregoing discussion, the Court concludes that Plaintiff has failed to allege adequately either that Wilbourn participated in a pattern of racketeering activity in connection with an enterprise in a manner forbidden by Section 1962(a)-(c), or that Debtor's injury directly flowed from the underlying predicate crimes which Wilbourn committed or aided and abetted. Given the insufficiency of the factual allegations of a direct causal link between Wilbourn's alleged predicate criminal acts and Debtor's injury, and the lack of a sufficient relationship between such acts and the injurious conduct of Brooks, the only remaining basis upon which Plaintiff can possibly assert a claim for civil relief against Wilbourn could only arise under Section 1962(d) on grounds of RICO conspiracy liability.
Plaintiff alleges that Wilbourn, Jackson, and Brooks, among others, were members of the same criminal enterprise which prevented Debtor from performing under its subconcessionaire agreement. See Amended Complaint ¶¶ 32-35, 46-49. Further, it is asserted that as a part of this alleged enterprise, co-defendant Brooks actively singled out and interfered with Debtor's business in a substantial and adverse manner. Amended Complaint ¶¶ 36-49. The amended complaint, however, lacks sufficient factual allegations to support the claim that Wilbourn was a part of a conspiracy to cripple Debtor's business.
Nowhere, for example, is it alleged that Wilbourn had knowledge of or participation in the actions targeted at Debtor by Brooks. Plaintiff merely asserts in general terms that Wilbourn and Brooks were part of a conspiracy. Amended Complaint ¶¶ 34, 45, 51. Further, Plaintiff simply provides broad statements that Debtor was ultimately driven out of business as a result of direct or indirect efforts to interfere with Debtor's interests through the denial of important economic benefits received by others. See Amended Complaint ¶¶ 30-35, 45-46, and 61; see also Sahlen, supra, 773 F.Supp. at 367. These allegations, however, do not address Wilbourn's knowing participation in the affairs of an enterprise, which contemplated the commission of racketeering acts in furtherance of its goal of causing direct and substantial harm to Debtor's business.
Under RICO conspiracy law, a party may incur liability for predicate crimes he did not commit, if he knowingly agreed to participate in the affairs of an enterprise, which others were using to accomplish certain criminal objectives through a pattern of racketeering activity. While there may be many minor or separate, individual conspiracies, ultimately they must be unified by one overall common goal and one over-arching conspiracy. See United States v. Valera, 845 F.2d 923, 929-30 (11th Cir.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989). Mere association with the enterprise in and of itself is insufficient to support RICO liability. Similarly, although RICO conspiracy liability does not require that all defendants have knowledge of the entire sweep of the conspiracy, its components must be linked in such a manner that provides a basis for concluding that an agreement existed and that the defendant was aware of the essential goals or the overall objective of the conspiracy. See generally United States v. Boylan, 898 F.2d 230, 241-42 (1st Cir.), cert. denied, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990); United States v. Campione, 942 F.2d 429, 437-38 (7th Cir.1991); see also Church, supra, 955 F.2d at 695; Carter, supra, 721 F.2d at 1531.
In his amended complaint, at best, Plaintiff has only alleged multiple and separate conspiracies with different goals. One possible connection is described in paragraph 46 in which it is alleged that the withholding of benefits in the form of free space and the imposition of excessive fees or commissary charges were tools used by the enterprise to strangle Debtor's business. Amended Complaint ¶ 46. In terms of intent and result, however, although injury to entities such as Debtor may have been foreseeable, no facts are alleged that Wilbourn and Jackson, through their conduct, knowingly proceeded *179 in such a manner that demonstrated a desire to ruin Debtor's business.
To the contrary, Brooks' alleged actions with regard to the Debtor appear to have been deliberately designed to cause substantial harm to its business. No facts, however, are alleged that Wilbourn knew or must have known that Brooks was conspiring to participate in the enterprise (of which Wilbourn was allegedly a member) through a sustained pattern of racketeering activity and cause the harm in question by use of such enterprise. Therefore, absent allegations that Wilbourn agreed to participate in this activity by knowingly using said enterprise for his own benefit, the amended complaint fails to state a claim for relief as against Wilbourn under Section 1962(d). See generally Valera, supra, 845 F.2d at 929. Hence, RICO conspiracy liability has not been sufficiently alleged and, accordingly, the federal RICO claim in Count I should be dismissed in its entirety as against Wilbourn.
In Count II of the amended complaint, Plaintiff relies on predicate acts described in O.C.G.A. § 16-10-93 (influencing witnesses), O.C.G.A. § 16-10-2 (bribery), and O.C.G.A. § 16-14-3(9)(A)(xxix) (conduct defined as racketeering activity under 18 U.S.C. § 1961(1)(A), (B), (C), and (D)). As discussed above, Georgia RICO is generally broader in scope than federal RICO, but to the extent Plaintiff is relying on federal predicate criminal acts previously discussed in connection with Count I, this portion of the Georgia RICO claim should be dismissed for the reasons previously discussed hereinbefore.
The Court further finds and concludes that Plaintiff has failed to allege a causal connection between the predicate crimes of influencing witnesses and bribery and the injury suffered by Debtor or even their relation to each other.[22] Additionally, the Georgia statute does not appear to include acts in violation of a fiduciary duty by an elected official in its definition of predicate acts. In any event, as noted herein, Plaintiff does not allege that Debtor's injury resulted by reason of such a violation. Hence, the Georgia RICO claims under Count II should be dismissed as against Wilbourn.
Plaintiff's allegations under Count V fail to set forth a claim against Wilbourn for tortious interference with business relations. Under this theory of liability, it must be alleged that a defendant:
(1) acted improperly and without privilege, (2) purposely and with malice with intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff to suffer some financial injury.
U.S. Anchor Mfg., Inc. v. Rule Industries, Inc., 7 F.3d 986, 1003 (11th Cir.1993), certified question answered, 264 Ga. 295, 443 S.E.2d 833, cert. denied, ___ U.S. ___, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994), quoting DeLong Equipment Co. v. Washington Mills Abrasive Co., 887 F.2d 1499, 1518 (11th Cir. 1989) (quotation omitted), reh'g denied, en banc, 896 F.2d 560, cert. denied, 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).
Plaintiff broadly alleges in paragraph 80 that defendants wrongfully interfered with Debtor's contractual rights under its subconcessionaire agreement with Dobbs Paschal and, further, conspired to ruin its business and drive it out of the airport. He does not sufficiently allege, however, that Wilbourn caused or participated in such interference or that he intended or agreed to the commission of such acts as against Debtor. Assuming all *180 factual allegations to be true and taking all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff can prove no set of facts in support of his claim for relief against Wilbourn on grounds of tortious interference with business relations. In this regard, these allegations seem to focus only upon Brooks. Thus, Count V of the amended complaint should be dismissed.
For all of the foregoing reasons, the Court concludes that Plaintiff has not sufficiently alleged a cause of action against Co-Defendant Mack Wilbourn under either federal or Georgia RICO law or with regard to tortious interference with business relations under state law and these claims should be dismissed. This decision is dispositive in nature and, as previously discussed, because Plaintiff's claims herein constitute non-core matters, the Court's ruling will be entered in the form of a recommendation to the district court. Accordingly, it is
RECOMMENDED to the district court that Co-Defendant Mack Wilbourn's renewed motion to dismiss should be granted and that Plaintiff's claims as asserted in the Amended Complaint under Counts I, II, and V should be dismissed as against Mack Wilbourn.
Written objections to this Court's proposed findings and conclusions herein may be filed in accordance with Fed.R.Bankr.P. 9033(b). If no objections are filed, this Order and Report may be adopted as the order of the district court.
The clerk is directed to transmit this Court's Order and Report, as well as those Orders entered by this Court on June 27, 1994, to the clerk of the district court.
The clerk is further directed to transmit Wilbourn's motion to withdraw the reference to the clerk of the district court.
Finally, the clerk is directed to serve a copy of this Order upon counsel for Plaintiff, counsel for Mack Wilbourn, and counsel for all other defendants herein.
IT IS SO ORDERED.
At Atlanta, Georgia this 20th day of June, 1995.
NOTES
[1] Mr. Wilbourn's name was apparently misspelled in the caption of the complaint.
[2] Based on the filing of an amended complaint and a second motion to dismiss, Wilbourn's prior motion to dismiss has thus been superseded and no further ruling is necessary in connection with same.
[3] As observed in this Court's Order entered on June 27, 1994, Wilbourn has also filed a motion for withdrawal of the reference of the above-styled adversary proceeding. See 28 U.S.C. § 157(d). Although the district court must decide the motion to withdraw the reference under 28 U.S.C. § 157(d), the issue of whether this proceeding is core or non-core is determined in the first instance by the bankruptcy court. See 28 U.S.C. § 157(b)(3); O'Connell v. Terranova (In re Adelphi Institute, Inc.), 112 B.R. 534, 539 (S.D.N.Y.1990); Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp., 106 B.R. 367, 369-70 (D.Del.1989). Such a determination is, of course, subject to review on appeal. See Blackburn v. Blue Cross & Blue Shield (In re GF Corp.), 127 B.R. 384 (Bankr.N.D.Ohio 1991).
[4] Compare In re Windsor Plumbing Supply Co., 170 B.R. 503, 512, 532-36 (Bankr.E.D.N.Y.1994) (RICO matter considered in context of claims estimation). Further, the present case is distinguishable from such core proceedings as when the RICO claim is asserted as a counterclaim or in the context of the claims objection and allowance process. See e.g. In re Chapman, 132 B.R. 132, 153 n. 10 (Bankr.N.D.Ill.1991); cf. Mann v. Michael Industries, Inc. (In re Inland Shoe Mfg. Co.), 90 B.R. 981, 983, 988 (Bankr.E.D.Mo.1988) (determination of motion to dismiss included consideration of trustee's RICO claim); see also Highway Equipment Co. v. Alexander Howden Ltd. (In re Highway Equipment Co.), 153 B.R. 186, 188, 200 (Bankr.S.D.Ohio 1993) (parties consented to bankruptcy court determination in non-core matter); Balaber-Strauss v. American Teltronics, Inc. (In re Coin Phones, Inc.), 148 B.R. 391, 396-97 (Bankr.S.D.N.Y.1992) (dismissal of alleged RICO violation claim treated as core matter).
[5] Similarly, the Court concludes that Plaintiff's state law RICO claims and state law tort claims for interference with business relations, as asserted against a third party, non-claim holder, are in the nature of a non-core proceeding.
[6] Wilbourn also maintains that Plaintiff has failed to allege adequately that venue and personal jurisdiction are proper in this Court. The Court finds, however, that in paragraphs 1 and 9 of the amended complaint, Plaintiff has made sufficient allegations as to venue (28 U.S.C. § 1409) and personal jurisdiction with regard to this defendant.
[7] Although they are complementary in certain basic respects, Georgia RICO as discussed hereinafter contains important differences.
[8] As discussed infra, Georgia RICO does not rely upon the existence of a RICO enterprise to the same degree as federal RICO, although in practice this distinction may be less significant. See generally Michael P. Kenny & H. Suzanne Smith, A Comprehensive Analysis of Georgia RICO, 9 Ga.St.U.L.Rev. 537, 544-45 (1993).
[9] The nexus/relationship issue, as discussed in Carter, supra, is reflective of the fact that, although Congress was originally targeting organized criminal activity, a RICO complaint may also be cast in a manner whereby the enterprise in question concerns a legitimate operation allegedly infiltrated by a scheme of illegal activity. Thus, even if the racketeering activity did not affect the affairs of an enterprise, a sufficient nexus is shown if the enterprise facilitated such activities. 721 F.2d at 1526-27; see also Turkette, supra, 452 U.S. at 577, 101 S.Ct. at 2525-26.
[10] The predicate acts themselves, of course, must be alleged with sufficient particularity. See Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, 660 F.Supp. 1362, 1369 (D.Conn. 1987).
[11] Moreover, under the language of the statute, it is the separate indictable acts which must be sufficiently continuous to constitute a pattern, as opposed to the scheme to defraud. In other words, multiple schemes are not required in order to show a pattern of racketeering activity under Section 1961(1) and (5).
[12] The federal incorporation clause has been subject to conflicting interpretations in connection with the issue of whether mail fraud is included within offenses "chargeable by indictment" under Georgia law. Cf. J.G. Williams v. Regency Properties, Ltd., 672 F.Supp. 1436, 1443 (N.D.Ga.1987); State v. Shearson Lehman Bros., Inc., 188 Ga.App. 120, 372 S.E.2d 276, 278 (1988); see also Dairymen, supra, 813 F.Supp. at 1585.
[13] Georgia RICO prohibits the acquisition or maintenance of an interest in or control of an enterprise or property of any nature through a pattern of racketeering activity or proceeds therefrom. See O.C.G.A. § 16-14-4(a). Section 16-14-4(b) makes it unlawful for a person associated with an enterprise to participate in such enterprise through a pattern of racketeering activity. Section 16-14-4(c) is the conspiracy provision.
[14] Several other indictments or criminal informations, which do not appear to relate directly to Wilbourn, are also referenced in the amended complaint.
[15] Wilbourn's acquittal as to these charges is generally public knowledge, but that fact has not been brought to the Court's attention in any of the pleadings filed of record herein. Neither has the present status of the charges against any of the other defendants been brought to the Court's attention.
[16] Moreover, as previously discussed herein, the lack of any allegations as to what part Wilbourn had in the management or direction of the affairs of the alleged enterprise may constitute a substantive deficiency under Section 1962(c).
[17] Wire fraud, which is similar to mail fraud, was not alleged in the indictment nor are grounds for such a claim set forth in the amended complaint against Wilbourn. In addition, the bribery charges (18 U.S.C. § 666) alleged in Count 85 of the indictment were not made with respect to Wilbourn, and the amended complaint contains no such allegations. See Amended Complaint ¶ 52(a) (18 U.S.C. § 666) and (b) (18 U.S.C. § 201). Thus, these alleged predicate acts do not appear to be applicable to Wilbourn, although the bribery charges could conceivably fall within the conspiracy allegation, which is addressed hereinafter.
[18] The phrase "scheme or artifice to defraud" as used in the mail fraud provision of Section 1341 includes a scheme "to deprive another of the intangible right of honest services." See 18 U.S.C. § 1346. This provision is also included in Plaintiff's allegations in paragraph 52(d).
[19] The scheme identified in these allegations may refer to Jackson's violation of his fiduciary duties, which is also asserted as the basis for a separate predicate act, though it could relate to the overall goal of the alleged conspiracy. Amended Complaint ¶ 52(c). In the indictment, the alleged scheme was to defraud the City of Atlanta and its citizens of their right to the honest services of Jackson in the performance of his official duties. See Indictment ¶ 1.
[20] This statutory provision, enacted on November 18, 1988, appears to restore the law to the status held prior to the Supreme Court's decision in McNally v. United States, 483 U.S. 350, 360-62, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292 (1987). In McNally, the Court determined that deprivation of an intangible right to honest services, as distinguished from a property right, could not support a conviction for mail fraud. See also United States v. Baker, 19 F.3d 605, 613 (11th Cir.1994). For example, commissions received by a state officer, by virtue of his procurement of insurance from a company in which he holds an interest, do not amount to a loss of property for purposes of mail fraud because said commissions are not property of the commonwealth. Under Section 1346, however, the basis of mail fraud convictions are apparently no longer restricted to schemes to defraud persons of money or property and may now extend to loss of intangible rights. See United States v. Johns, 742 F.Supp. 196, 201-06, 216-17 (E.D.Pa.1990), aff'd in part and rev'd in part without op., 941 F.2d 1204 (3d Cir.1991), and aff'd without op., 972 F.2d 1333 (3d Cir.1991). Although the Eleventh Circuit narrowly defines a property right in such contexts, based on Section 1346, deprivation of an intangible right to honest services may be sufficient to sustain a mail fraud conviction. See generally Goodrich, supra, 871 F.2d 1011.
[21] Because Plaintiff does not appear to have alleged any grounds for his claim under Section 1342 (conducting a scheme through the mails using a fictitious name) apart from the mail fraud allegations under Section 1341, the above analysis and conclusion is likewise applicable to said claim. See Amended Complaint ¶ 52(d).
[22] Although federal RICO and Georgia RICO have certain differences, it is likely that Georgia courts would reach a similar conclusion with regard to standing or causation requirements in civil actions as required in decisions such as Pelletier, supra. See generally Campbell v. Emory Clinic, 1:90-CV-1403-HTW (N.D.Ga. Aug. 6, 1992) (federal court applied federal RICO standing requirements in context of Georgia RICO); see also Martin v. State, 189 Ga.App. 483, 485, 376 S.E.2d 888 (1988) (Georgia courts look to federal RICO decisions for guidance in applying Georgia RICO). Even though the Georgia Court of Appeals stated in InterAgency, supra, 203 Ga. App. at 424, 417 S.E.2d 46, that direct harm need not be proven in connection with each predicate act to establish the requisite interrelatedness, such reasoning does not preclude the requirement of a direct connection between some of the alleged acts and the injury asserted for purposes of civil damages.